## David R. Shaw v. John Clark et al.

*Negotiable Paper—Notice of defects—Dealing in options not gaming or betting—Construction of penal statutes.*

A bank is not charged with knowledge of the character of negotiable paper by the mere fact that it discounts it on the recommendation of a director, if the latter does not control its discretion or discount the paper himself as an officer or agent of the bank.

One who holds negotiable paper by an unimpeachable title may transfer a like title to any other person, and the latter's knowledge of original defects or equities will not affect it in his hands.

"Dealing in options" though contrary to public policy to such an extent as to render negotiable paper based upon it invalid for want of consideration, is not "gaming" or "betting" as those terms are commonly understood, or within the meaning of Comp. L. §1996, which is of a penal nature and declares all notes, etc., in which any part of the consideration shall be for goods won by any betting or gaming, or for reimbursing moneys knowingly advanced for betting or gaming, shall be void as between the parties and all persons except *bona fide* holders without notice.

"Gaming" commonly applies to playing with stakes at cards, dice or other contrivance to see which shall be the winner and which the loser.

"Betting" commonly means the putting of a certain sum of money or other valuable thing at stake on the happening or not happening of some uncertain event.

Penal statutes cannot be enlarged by intendment, and acts not expressly forbidden by them cannot be reached merely because they resemble the offenses provided against or are equally and in the same way demoralizing or injurious; they cannot be made to embrace anything which was not within the intent of the Legislature.

Error to Lapeer.   Submitted Oct. 10.   Decided Oct. 31.

Assumpsit.   Defendants bring error.   Affirmed.

*Geer & Williams* and *Henry M. Cheever* for appellants.

*Ed. E. Kane* and *Otto Kirchner* for appellee.   Banks are not chargeable with the knowledge which their directors

have acquired in their individual capacity as to paper offered for discounting and which they do not disclose: *Farrel Foundry v. Russell* 26 Conn. 376; *Ins. Co. of Maryland v. U. S. Ins. Co.* 10 Md. 517; *Bank v. Norton* 1 Hill 572; *Miller v. Central R. R.* 24 Barb. 312; *Fulton Bank v. Canal Co.* 4 Paige 128; *Westfield Bank v. Cornen* 37 N. Y. 320; *Atlantic State Bank v. Savery* 82 N. Y. 307; *First Nat. Bank of Hightstow v. Christopher* 40 N. J .L. 435; and if the bank discounts it in good faith and the director afterwards purchases it before maturity, for value, he has the rights of the bank: 1 Dan Neg. Inst. (2d ed.) § 656; 1 Pars. N. & B. 254, 261: 2 id. 26; Edwards on Bills 371; *Bank v. Harrison* 10 Fed. Rep. 243.

Cooley, J. This suit is upon a note given by the defendants under the partnership name of John Clark & Sons for four thousand dollars, dated October 29, 1879, and payable ninety days after date to the order of Johnson, Shaw & Co. The note was indorsed by Johnson, Shaw & Co. and discounted by the First National Bank of Pontiac, and the plaintiff, just before it fell due, paid the amount to the bank and it was transferred to him.

The defense made to the note is that it was given for a gambling consideration, and that the plaintiff is not a holder in good faith. The facts appear to be that previous to the date of the note the makers had been dealing in wheat "options" through two commission houses in Detroit, and a sum of which this note represents a part, was then claimed of them as "margins." Demand for the payment of this sum was made, and they were not prepared to meet it. By arrangement with Johnson, Shaw & Co., who were also commission dealers in grain, that firm took the deals off the hands of the other houses and undertook to carry them, defendants at the same time giving their notes for the margins. Plaintiff, who was cognizant of all the facts, and was at the same time a director in the First National Bank of Pontiac, recommended the note to that bank for discount, and it was discounted on his recommendation. He testifies

that it was because he had advised the bank to take it, that
when they found the makers were not disposed to take it
up, he paid the bank and took it himself.    Plaintiff is father
to one of the partners in Johnson, Shaw & Co., and the
partnership was at the time largely indebted to him.

In the trial court defendants insisted on their right to go
to the jury on the question whether the bank received and
held the note in good faith.    Plaintiff had testified in a
general way that he as director represented the bank at
Detroit; and it was insisted that there was enough in the
case to justify an inference that the knowledge the plaint-
iff had of the facts was communicated to the bank, or if not,
to charge the bank by construction of law, with such knowl-
edge as was possessed by the plaintiff, who in this trans-
action should be regarded as being its agent.    But there
was not the slightest evidence that either of the managing
officers of the bank was notified of any defect or infirmity
in the consideration, or that the plaintiff had any other
agency in the bank than such as is implied in his being a
member of the governing board.    If the plaintiff as officer
or agent of the bank had discounted the note in person, the
bank might have been charged with constructive notice of
such facts as were within his knowledge : *Bank of United
States v. Davis* 2 Hill 451 ; *National Security Bank v.
Cushman* 121 Mass. 490 ; but the mere fact that he was
director did not charge the bank with knowledge.    This was
so held in *Custer v. Tompkins County Bank* 9 Penn. St. 27,
though the director was present when paper obtained with-
out consideration was discounted, and was in fact an indorser
upon it.    To the same effect are *Washington Bank v.
Lewis* 22 Pick. 24 ; *Terrell v. Branch Bank of Mobile* 12
Ala. 502 : and *National Bank v. Norton* 1 Hill 572.    In
this case the plaintiff did not act for the bank at all ; he
recommended the paper to the proper officers as suitable
paper to be received and discounted by them ; and they took
it, acting upon his recommendation, as they might have
done on the recommendation of any other person, but in
the exercise of a discretion which the plaintiff did not con-

trol. Nothing therefore appears to impeach in any way the holding of the bank as a holding in good faith.

But it is further claimed that even if the bank was holder in good faith, plaintiff, with his knowledge of the want of legal consideration, could not acquire a good title by assignment. The general rule is admitted to be, that one who holds negotiable paper by unimpeachable title may transfer a like title to any other person, and that knowledge on the part of the transferee of original defects or equities will be of no moment. *Kost v. Bender* 25 Mich. 516; *Wood v. Starling* 48 Mich. 592. But this case is said to be taken out of the general rule by the express` provisions of § 1996 of the Compiled Laws; and we are referred to that section as being conclusive against a recovery. The provision is as follows: " All notes, bills, bonds, mortgages, or other securities or conveyances whatever, in which the whole or any part of the consideration shall be for any money or goods won by playing at cards, dice, or any other game whatever, or by betting on the sides or hands of such as are gaming, or by any betting or gaming whatever, or for reimbursing or repaying any money, knowingly lent. or advanced for any gaming or betting, shall be void, and of no effect, as between the parties to the same, and as to all persons, except as to those who hold or claim under them in good faith, and without notice of the illegality of such contract or conveyance." It is said by the defence that the purchase of options is nothing but betting on a future market, and that the case is directly within the terms as well as the mischief of the statute.

There is no doubt that a purchase of options is opposed to public policy by reason of its demoralizing character, and that any contract which has no other consideration is void in law. This was in effect decided in *Gregory v. Wendell* 39 Mich. 337: s. c. 40 Mich. 432. But that decision was grounded on general principles of the common law; and the statute now brought to our attention was not relied upon or referred to by counsel or by the court. It was shown in that case that such a purchase was in the nature

of a gambling contract, and that the evils of ordinary gaming inhered in it. But it was not said or intimated that it was gaming in the ordinary sense of that term, or that the parties to it could be considered as parties to a bet or wager. And as the statute now invoked was not then before the Court, nothing said in the opinions can be considered as expressly designed to throw light upon its construction.

In common speech gaming is applied to play with stakes at cards, dice or other contrivance, to see which shall be the winner and which the loser. A contract for the purchase of options is not gaming within this meaning of the term. In form it is the purchase and sale of a commodity to be delivered at a future day, and it only resembles gaming in that the parties take a chance of gain or loss without intending that the sale which they nominally make shall ever become a legitimate business transaction. Betting in common speech means the putting of a certain sum of money or other valuable thing at stake on the happening or not happening of some uncertain event. A purchase of options is not betting in this sense, though it resembles it in the fact that risks are taken on uncertain events, and that the tendency to those engaged in it is demoralizing. The statute in terms forbids betting and gaming, and it contains penal provisions for the punishment of those who engage in them ; but penal statutes are not enlarged by intendment, and acts not expressly forbidden by them cannot be reached merely because of their resemblance, or because they may be equally and in the same way demoralizing and injurious. The principles of the common law adapt themselves to new conditions of things, and may defeat a demoralizing transaction or contract though it be the first of its kind ; but penal statutes are not flexible, and they can be made to embrace nothing which was not within the intent of the Legislature in passing them. If other things equally injurious seem to deserve the same punishment, the Legislature alone can provide for it.

We have no idea that the purchase of options was in the

mind of the Legislature when passing the statute against betting or gaming. We have not overlooked what is said in *Barnard v. Backhaus* 52 Wis. 593, regarding a similar statute, but we do not understand the remarks of the court as expressive of an opinion that such a transaction is betting or gaming within the meaning of the statute. The statute is referred to as indicating a general policy opposed to all such dealings; and we agree in what is said on that subject. It is in the light of that policy, evidenced by the common law as well as by the statute, that we hold the note in suit to have been given without consideration; but when the defense of invalidity is interposed after the note has been in the hands of a *bona fide* holder, the defendants must place their reliance upon the statute exclusively, it being admitted that the mere fact that the note was void in its inception is not sufficient for their purposes. The statute, we think, does not reach the case.

The defense also claimed the right to argue to the jury that plaintiff did not purchase the note of the bank, but paid it. The circuit judge thought there was no evidence tending to prove such a payment; and we agree in this. Plaintiff testified that he took the note from the bank because he had recommended it, and not with any view to payment. He admitted that he included it in his account against Johnson, Shaw & Co., but this was not inconsistent with his testimony that he expected to look to defendants for payment; for he had a right to look to the makers and also to the indorsers. It is urged that the jury might not have believed his evidence; but it is certain that if his evidence were disbelieved and rejected, there would be nothing left on which to base any defense whatever. No one else testifies to any facts tending to show that the plaintiff's holding is not for value, or that he took the note by way of payment.

We think the judgment must be affirmed with costs.

The other Justices concurred.