OAKLAND COUNTY PROSECUTOR v 46TH DISTRICT JUDGE

1. APPEAL AND ERROR—COURT OF APPEALS—JURISDICTION—CIRCUIT
   COURTS—DISTRICT COURTS—APPEAL AS OF RIGHT—APPLICATION
   FOR LEAVE TO APPEAL—APPEAL BY LEAVE GRANTED.

   An appeal from a circuit court regarding determinations made by
   a district court is not properly within the jurisdiction of the
   Court of Appeals as an appeal of right where a plaintiff had a
   plain, speedy and adequate remedy of appeal to the circuit
   court from the district court's decision; the proper procedure
   for appellate review by the Court of Appeals under such
   circumstances is to file an application for leave to appeal;
   nevertheless, to dispose of a case on the merits, the Court of
   Appeals may treat such an improper claim of appeal as an
   appeal on leave granted.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error §§ 309–311.

[2] 5 Am Jur 2d, Appeal and Error §§ 829, 830, 873.

[3] 38 Am Jur 2d, Gambling §§ 42, 57, 60.
   Construction and application of state or municipal enactments
   relating to policy or numbers games. 70 ALR3d 897.

[4, 11] 38 Am Jur 2d, Gambling § 56.
   Gambling in private residence as prohibited or permitted by anti-
   gambling laws, 27 ALR3d 1074.

[5] 38 Am Jur 2d, Gambling § 10.

[6, 9] 73 Am Jur 2d, Statutes §§ 313–316.

[7] 38 Am Jur 2d, Gambling §§ 33, 34.
   Criminal conspiracies as to gambling. 91 ALR2d 1148.

[8, 9] 73 Am Jur 2d, Statutes § 346.
   Indefiniteness of language as affecting validity of criminal legisla-
   tion or judicial definition or common-law crime—Supreme Court
   cases. 16 L Ed 2d 1231.

[10] 16 Am Jur 2d, Constitutional Law §§ 302, 345–347, 349.

[11] 62 Am Jur 2d, Privacy § 17.

[12] 21 Am Jur 2d, Criminal Law §§ 115, 118.
   63 Am Jur 2d, Prosecuting Attorneys § 26.

[13, 14] 16 Am Jur 2d, Constitutional Law §§ 485, 488, 494, 495.

[14] 16 Am Jur 2d, Constitutional Law § 137.

2. STATUTES—COURTS—CONSTRUCTION—DUTY TO ENFORCE—COURT OF APPEALS.

The Court of Appeals has the duty of enforcing a clear and unambiguous statute as written.

3. STATUTES—GAMBLING—SPECIFIC PROVISIONS—EXCEPTIONS—EXCLUSION OF GAMES—LOTTERY AND BINGO.

Michigan statutes have specific provisions directed at combating organized, commercialized gambling; various exceptions have been made to these statutes such as the exclusion of certain types of games and the allowance of lottery and bingo.

4. STATUTES—GAMBLING—LEGISLATURE—CARD GAMES—CONSENTING ADULTS—LEGISLATIVE INTENTION.

The Legislature has expressed no intention to exempt the private playing of cards for money between consenting adults from the gambling statute (MCLA 750.301 *et seq.;* MSA 28.533 *et seq.).*

5. CONSTITUTIONAL LAW—GAMBLING—LEGISLATURE—PUBLIC MORALS AND WELFARE—POLICE POWER—SUPPRESSION OF GAMBLING.

The Legislature has the right to conclude that gambling is injurious to the morals and welfare of the people and it is clearly within the scope of the state police power to suppress gambling in all of its forms.

6. STATUTES—LEGISLATURE—POWER TO ENACT—PUBLIC INTEREST AND WELFARE.

It is within the province of the Legislature to write a statute that proscribes certain activities that are considered to be against the best interest and welfare of the people of the state.

7. CONSPIRACY—CRIMINAL LAW—STATUTES—GAMBLING—CONSPIRACY TO GAMBLE.

Conviction for the crime of conspiring to gamble in a situation involving only two individuals is improper because those individuals may be convicted of violation of the gambling statutes; where more than two individuals are involved in the violation of the gambling statutes, all such individuals can be charged with conspiring to violate the law.

8. CONSTITUTIONAL LAW—STATUTES—VAGUE STATEMENTS—PROSCRIBED CONDUCT—FIRST AMENDMENT FREEDOMS—JUDGES AND JURORS—FREEDOM OF DECISION.

A statute, to be unconstitutionally vague and in violation of the Due Process Clause, must be so imprecise in its language that it fails to give fair notice of the conduct proscribed, impinges upon First Amendment freedoms, or is so vague and lacking in

standards that it leaves judges and jurors free to decide what is or is not prohibited by the statute in each particular case.

9. CONSTITUTIONAL LAW—STATUTES—VAGUE STATUTES—PROSCRIBED CONDUCT—JUDGES AND JURORS—DISCRETION.

Failure to list each and every form of conduct proscribed by a statute is no reason to hold such statute constitutionally vague where the conduct proscribed is specifically set forth and judges or jurors do not have unlimited discretion to determine who shall be punished for certain conduct but are left to determine whether or not accused individuals have engaged in the proscribed conduct.

10. CONSTITUTIONAL LAW—FREEDOM OF SPEECH—COURSE OF CONDUCT —ILLEGALITY—ABRIDGEMENT.

It is not deemed an abridgement of freedom of speech to make a course of conduct illegal merely because the conduct in part is carried out by means of spoken, written or printed language.

11. CONSTITUTIONAL LAW—CRIMINAL LAW—CRIMINAL ACTS—CONSENSUAL ACTS.

No one has a constitutional right to commit criminal acts consensually in his own home.

12. CRIMINAL LAW—PROSECUTING ATTORNEY—SELECTION FOR PROSECUTION—SELECTION OF WITNESSES—DISCRETION.

The decision as to the selection of those to be prosecuted for a crime and those to be used as witnesses lies within the judgment of the prosecutor.

13. CONSTITUTIONAL LAW—EQUAL PROTECTION—SELECTION OF LAWS— ENFORCEMENT OF LAWS—ARBITRARY CLASSIFICATION.

Selectivity in the enforcement of laws is not a violation of the Federal constitution as to equal protection unless the selection is based upon race, religion or some other arbitrary classification.

14. CRIMINAL LAW—DISCRIMINATION—INTENTIONAL OR PURPOSEFUL— SELECTION OF LAWS—ENFORCEMENT OF LAWS—AFFIRMATIVE SHOWING OF DISCRIMINATION.

Intentional or purposeful discrimination in the selection or enforcement of criminal laws will not be presumed; there must be an affirmative showing of clear and intentional discrimination to support such a claim.

Appeal from Oakland, Arthur E. Moore, J. Sub-

mitted March 1, 1977, at Lansing. (Docket Nos. 26328, 26459, 26560, 26561.) Decided June 20, 1977.

Complaint by the Oakland County Prosecutor against the 46th District Judge seeking an order of superintending control because the district judge improperly dismissed charges of conspiracy to violate state gambling laws. The circuit court entered an order vacating the order of dismissal by the district court and remanded to the court. Defendants, the parties charged with conspiracy, had been permitted to intervene in the superintending control action in the circuit court and now claim appeal. Claims of appeal treated as applications for leave to appeal, and leave to appeal granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Michael J. Modelski,* Assistant Appellate Counsel, for plaintiff.

*Lawrence B. MacDonald,* for defendant Mathew P. Locricchio.

*Stuart B. Eisenberg,* for defendant Robert Mittleman.

*Ivan E. Barris* and *Michael H. Golob,* for defendant Robert Bageris.

*Joel R. Isaacson,* for defendant David Singer.

Before: DANHOF, C. J., and T. M. BURNS and J. E. McDONALD,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

J. E. McDonald, J. Intervening defendants were charged with conspiracy to violate the state gambling statute, MCLA 750.301 *et seq.;* MSA 28.533 *et seq.;* MCLA 750.157a; MSA 28.354(1). The district judge dismissed the complaint on the basis that the gambling act did not apply to this fact situation. The circuit court reviewed the action of the district judge and decided that the district judge erred in construing the applicable law. The matter is before this Court on an appeal from the decision of the circuit court holding that the district judge erred in his finding that the Michigan gambling statute was inapplicable.

At the outset we find that this appeal is not properly within the jurisdiction of this Court as an appeal of right because the plaintiff has a plain, speedy and adequate remedy of an appeal to the circuit court from the district court's decision. See *Moore v Ninth District Judge,* 69 Mich App 16; 244 NW2d 346 (1976), *Oakland County Prosecutor v 46th District Judge,* 72 Mich App 564; 250 NW2d 127 (1976). Because plaintiff's remedy was by appeal to the circuit court and not superintending control, the circuit court's decision is reviewable by this Court upon application for leave to appeal rather than claim of appeal as of right. However, in order to dispose of the case on the merits, we treat the appeal as an appeal on leave granted.

On three separate occasions, May 17, May 18 and May 31, 1974, seven persons gathered in the apartment of one of the defendants by prearrangement and engaged in poker games where money was bet in amounts varying from one hundred to several thousand dollars.

One of the participants in these three poker sessions was the complaining witness. He was a coconspirator, but was not named as a defendant.

At a preliminary examination, the prosecutor moved to have the charge of conspiracy dismissed as to two of the co-conspirators and codefendants. This motion was granted. The remaining four co-conspirators and codefendants had a preliminary examination.

The district court, after hearing testimony, having briefs submitted and listening to oral argument, dismissed the charges against the four alleged co-conspirators.

The district judge noted that this was a case of first impression in this state and found that seven persons played cards for money in the apartment of one of the defendants on three separate occasions in May of 1974. He found that the games consisted of poker and baccarat, admittedly for stakes. He found that each participant came voluntarily; that there were no commercial aspects to the gambling and that the winning involved luck, skill, and depended on the amount of money that each participant had wagered.

The district judge went on to state that he found the complaint ambiguous and his interpretation of the statute was that it covered gambling in which someone was making a profit by operating an illegal business and that the statute "could not be stretched" to cover poker games.

The district judge also found that the four defendants were subjected to discriminatory prosecution. He took judicial notice that others in the state and in his district were engaged in this type of activity and had not been charged with a crime. He found the complaint to be selective prosecution. The district judge criticized the dismissal of some of the defendants and said that this prevented the remaining four defendants from being afforded equal protection under the United States Constitution.

The district judge was of the belief that under "Wharton's Rule",** the number of participants involved was immaterial and that this rule required different elements to be shown for the crime of conspiracy than for the commission of the substantive offense. He also anticipated that the Legislature of Michigan would soon decriminalize victimless crimes and anticipated that the situation covered in the complaint would be included in that action by the Legislature. The district judge said that he was not making comment on the right of consenting adults to engage in activities in the privacy of their own home and that by his lack of comment was not suggesting that these theories did not apply to the case before him. The district judge found that a conspiracy had not been committed and dismissed the complaint.

In a review of this action by the district judge before the circuit court, the circuit judge found that the district judge had erred. The circuit judge found that solicitation, invitation, and resultant participation by the defendants in the gambling operation clearly showed probable cause for determination by the district judge of conspiracy to gamble at cards.

The circuit judge decided that the district judge erred in interpreting the involved statute as covering only commercialized gambling for profit. The circuit judge also found that the district judge was in error in his finding that the so-called selective prosecution denied defendants equal protection of the law.

We agree with the circuit judge.

---

** Wharton's Rule of Criminal Conspiracy, also called the concert of action rule: an agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy where the crime is of such a nature that it necessarily requires the participation of two persons for its commission. *See* 16 Am Jur 2d, Conspiracy, § 16, p 136.— REPORTER.

The evidence offered at the preliminary examination established that on three separate occasions during the month of May, 1974, on May 17, 18, and 31, the defendants and others gathered at the intervening defendant Bageris' apartment for the purpose of engaging in poker games involving betting on the outcome of the games. The participants gathered as a result of personal invitation or through telephonic announcement of the time and place and occasionally it was agreed that they would all reconvene and further engage on a subsequent announced date. Michigan gambling statute MCLA 750.301; MSA 28.533 provides:

"Any person or his agent or employee who shall, directly or indirectly take, receive or accept from any person any money or valuable thing with the agreement, understanding or allegation that any money or valuable thing will be paid or delivered to any person where such payment or delivery is alleged to be or will be contingent upon the result of any race, contest or game or upon the happening of any event not known by the parties to be certain, shall be guilty of a misdemeanor, punishable by imprisonment in the county jail for not more than 1 year or by a fine of not more than 500 dollars."

The initial question is whether the statute is clear and unambiguous. If so, it is apparent that it is the Court's duty to enforce the statute as written. *Nordman v Calhoun,* 332 Mich 460, 465; 51 NW2d 906 (1952). *Ford Motor Company v State Tax Commission,* 63 Mich App 577, 584; 234 NW2d 711 (1975). Defendants say it is to be presumed that this statute was directed merely at organized, commercialized gambling. This conclusion is not supported when the entire gambling act is viewed as a whole. An examination of the Michigan stat-

utes reveals that specific statutory provisions have been passed, directed at combating organized, commercialized gambling, MCLA 750.302; MSA 28.534 and MCLA 750.303; MSA 28.535. It is not a reasonable interpretation to conclude that the above § 301 was intended by the Legislature to be directed solely toward the same purpose. Furthermore, there have been various exceptions made by the Legislature where they have seen fit to exclude certain types of games and the allowance of lottery and bingo with further exceptions provided in MCLA 750.310; MSA 28.542. Had the Legislature intended to exempt the private playing of cards for money between consenting adults from the gambling statute, it could easily have expressly done so. See Anno: *Gambling in Private Residence as Prohibited or Permitted by Anti-Gambling Laws,* 27 ALR3d 1074. It would appear that, in enacting the gambling laws, the Legislature was attempting to alleviate the evils inherent in unregulated gambling such as cheating or fraud and the possibility that an individual might become so affected by such activity as to fail to care for the needs of himself or his family and become a charge on society. The Legislature has the right to conclude that gambling is injurious to the morals and welfare of the people and it is clearly within the scope of the state police power to suppress gambling in all of its forms. See *Parkes v Judge of Recorder's Court,* 236 Mich 460; 210 NW 492 (1926).

Defendants' reliance upon the decision in *People v Otis Adams,* 34 Mich App 546; 192 NW2d 19 (1971), *affirmed in part* 389 Mich 222; 205 NW2d 415 (1973), in support of their construction of the statute is not well-founded.

In *People v Adams, supra,* at 245, the Supreme Court said that asportation is "an essential ele-

ment of the crime" of kidnapping. Since the Michigan statute as written did not include the element of asportation, it was felt by the Court imperative that it be included to restrict the breadth of the kidnapping statute. We have no such problem here. MCLA 750.301; MSA 28.533 is broad, and it is well within the province of the Legislature to write a statute that proscribes certain activities that are considered to be against the best interest of the welfare of the people of the state. It should also be pointed out that in Michigan we do have statutes that prevent gambling on the basis that the defendant urges.

The defendants cite the case of *United States v Hunter,* 478 F2d 1019 (CA 7, 1973), *cert den,* 414 US 857; 94 S Ct 162; 38 L Ed 2d 107 (1973), for the proposition that the application of the so-called "Wharton's Rule" should not turn on the number of individuals involved in the crime's commission, but rather on whether any additional proofs or elements are needed to show the conspiracy over and above the substantive offense.

In *People v Clifton,* 70 Mich App 65, 67; 245 NW2d 175 (1976), quoting Perkins on Criminal Law 2d, p 620, this Court set forth the rationale for the so-called "Wharton's Rule" as follows:

" 'If the target [substantive] offense requires concerted action and none participate other than the necessary parties there is no added danger because nothing is involved which will not be present whenever the offense is committed. In such a case, there is no logical basis for conviction of other than the target offense, or an attempt, if the plan is carried that far.' "

Defendants argue that this Court should rule that "Wharton's Rule" would preclude defendants from being convicted of conspiring to violate this

law because the substantive offense of gambling requires the concerted action of at least two individuals. An examination of the applicable law indicates that defendants' contention is without merit.

Although it would appear that "Wharton's Rule" would, in a situation involving two individuals, preclude such individuals from being convicted of the crime of conspiring to gamble, it is apparent that where more than two individuals are involved in the violation of gambling statutes, all such individuals can be charged with conspiring to violate the statutes, Anno: *Criminal Conspiracies as to Gambling,* 91 ALR2d 1148, 1156–1158, see *People v Purcell,* 304 Ill App 215; 26 NE2d 153, 154 (1940). In *Hunter, supra,* the Court of Appeals for the 7th Circuit reversed defendants' convictions for conspiring to violate the Federal gambling law, even though the number of defendants charged with violating this law exceeded the minimal number of participants necessary to establish the substantive offense. That Court followed the theory that the applicability of the rule depended on whether or not the conspiracy charged was based on proof of an element which was not part of the substantive offense. 478 F2d at 1025. The theory followed by *Hunter,* however, is no longer the rule since the recent Supreme Court decision in *Iannelli v United States,* 420 US 770; 95 S Ct 1284; 43 L Ed 2d 616 (1975). In the *Iannelli* case, the United States Supreme Court extensively reviewed the split of authority on "Wharton's Rule" among the various circuit courts and indicated that the rule was not applicable where Congress had indicated an intent to retain the option of imposing additional sanctions for conspiring to violate Federal gambling laws.

An examination of the Michigan gambling statute and the applicable conspiracy statute shows that the Legislature could not be said to have intended to merge conspiracy and the substantive offense into a single crime. Therefore, applying the reasoning of *Iannelli* to the facts of this case, it is clear that "Wharton's Rule" did not preclude defendants from being charged with conspiring to violate Michigan's gambling statute.

The defendants urge that the statute in question is unconstitutionally vague because it leaves the public uncertain as to the conduct it prohibits.

To find a law unconstitutionally vague in violation of the Due Process Clause, it must be found that its language is so imprecise that it fails to give fair notice of the conduct proscribed, or that its language is certain but its breadth could impinge upon the First Amendment freedoms or its language is so vague and lacking in standards that it leaves judges and jurors free to decide what is or is not prohibited by the statute in each particular case. *Giaccio v Pennsylvania,* 382 US 399, 402–403; 86 S Ct 518, 520–521; 15 L Ed 2d 447, 450 (1965). *People v Otis Adams, supra,* at 559. The mere fact that the Legislature failed to list each and every form of conduct proscribed by statute is not a ground for this Court to hold that such statute is constitutionally vague nor can it be said that the language confers upon judges or jurors unlimited discretion to determine who shall be punished for certain conduct. The conduct proscribed is specifically set forth. See *Shaw v Clark,* 49 Mich 384; 13 NW 786 (1882). The judge or jury is left merely to determine whether or not the accused individuals have engaged in the proscribed conduct.

The defendants assert that if this Court were to interpret the statute to apply to private playing of

cards for money between consenting adults, such application would result in the statute being unconstitutionally vague because it would impinge upon protected constitutional freedom of expression and the constitutional right to freedom.

It is not deemed an abridgement of freedom of speech to make a course of conduct illegal merely because the conduct in part is carried out by means of spoken, written or printed language. *Stromberg v California,* 283 US 359; 51 S Ct 532; 75 L Ed 1117 (1931). It is clear that the statute herein was directed at protection of the welfare and morals of the public and designed to eliminate the harm thought by the Legislature to follow from gambling. Defendants argue that this statute invades the privacy of a man's home and punishes him for acts that harm no one and is in violation of the Federal constitution. It should be pointed out that the defendant raising this argument is not the owner of the apartment in which the games were held, and would, therefore, appear to have no standing to raise this claim. No one has a constitutional right to commit criminal acts consensually in his own home. *Doe v Commonwealth's Attorney for City of Richmond,* 403 F Supp 1199 (ED Va, 1975), *aff'd* 425 US 901; 96 S Ct 1489; 47 L Ed 2d 751 (1976), *reh den,* 425 US 985; 96 S Ct 2192; 48 L Ed 2d 810 (1976).

It should be pointed out that the defendants are not here charged with a violation of the gambling law which is a misdemeanor, but are charged with a conspiracy to violate the gambling law which is a felony. The defendants also claim that they have been subjected to discriminatory prosecution because no one else has been prosecuted for engaging in activities similar to those in which they engaged and also that they have been subjected to

selective prosecution because the prosecutor saw fit to dismiss as against two of the conspirators and this action on the part of the prosecutor, the defendants claim, denied them the equal protection of the law and is a violation of their constitutional rights. The decision as to which defendants may be used as witnesses and the decision as to the selection of those to be prosecuted and those to be used as witnesses lies within the judgment of the prosecutor.

Selectivity in the enforcement of laws is not a violation of the Federal constitution as to equal protection unless it is based upon race, religion or some other arbitrary classification.

Intentional or purposeful discrimination will not be presumed and there must be an affirmative showing of clear and intentional discrimination. *People v Gillespie,* 41 Mich App 748, 751; 201 NW2d 104 (1972). There has been no such showing on the part of any of the defendants in this matter.

The remand by the circuit court of this matter to the district court for further appropriate action is affirmed.