# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

RAHMANH KEITH SHAW,

    Defendant-Appellant.

UNPUBLISHED
June 21, 2018

No. 337313
Livingston Circuit Court
LC No. 15-022704-FH

---

Before: O'BRIEN, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] his sentence arising out of his guilty pleas to organized retail crime, MCL 752.1084; receiving stolen property, MCL 750.535(3)(a); three counts of obtaining, possessing, or transferring personal identifying information, MCL 445.67; and three counts of using a computer to commit a crime, MCL 752.797(3)(d). We affirm.

On May 16, 2016, defendant pleaded guilty to using stolen credit cards and stolen identities to purchase various merchandise totaling approximately $7,000 from retail stores. Defendant's sentencing hearing was originally scheduled for July 11, 2016. On July 6, 2016, defense counsel sought an adjournment of the sentencing hearing because defendant was incarcerated in Ohio and would not be able to attend the scheduled hearing. The trial court granted the request and adjourned the sentencing hearing.

Sentencing recommenced on September 9, 2016. At the hearing, defendant contested scoring offense variables (OV) 14 and 19, arguing that they should each be scored at zero. The trial court disagreed and assessed 10 points for each.

On appeal, defendant argues that the trial court erred in assessing 10 points for OV 14 and 19. With respect to OV 14, he argues that the trial court erred by finding that he was a "leader in a multiple offender situation." MCL 777.44(1)(a). Defendant claims that, because no

---

[1] *People v Shaw*, unpublished order of the Court of Appeals, entered April 21, 2017 (Docket No. 337313).

-1-

other person was charged with a crime arising out of these facts, this was necessarily not a multiple-offender situation. We disagree.

"Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *Id*. When scoring the sentencing guidelines, the trial court may consider all of the evidence in the record. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).

MCL 777.44 provides direction for the scoring of OV 14 and states in relevant part:

> (1) Offense variable 14 is the offender's role. Score offense variable 14 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) The offender was a leader in a multiple offender situation.............................................................................10 points
>
> (b) The offender was not a leader in a multiple offender situation..............................................................................0 points

The trial court should consider the entire criminal transaction when scoring OV 14. MCL 777.44(2)(a). A "leader" for purposes of OV 14 is someone who "acted first or gave directions, or was otherwise a primary causal or coordinating agent." *People v Dickinson*, ___ Mich App ___; ___ NW2d ___ (2017), slip op at 10 (Docket No. 332653). A "multiple offender situation" is a "situation consisting of more than one person violating the law while part of a group." *People v Jones*, 299 Mich App 284, 287; 829 NW2d 350 (2013), vacated in part on other grounds 494 Mich 880 (2013).

The evidence in this case demonstrated that there were two vehicles linked to defendant that were involved in the crimes, and both vehicles contained items related to the crimes. A second person, Christian Rainey, was staying with defendant in the hotel room where defendant was arrested. Police officers interviewed Rainey. Rainey admitted that he knew defendant purchased merchandise at Home Depot and that he helped load the merchandise into defendant's van, but he denied having any knowledge that the merchandise was fraudulently obtained. The police ultimately released Rainey, and he was not charged with any crime. The trial court did not clearly err in finding that defendant "gave directions, or was otherwise a primary causal or coordinating agent," *Dickinson*, slip op at 10, because (1) both vehicles were linked to defendant, (2) defendant could not have driven both vehicles by himself, and (3) Rainey admitted to helping defendant load the merchandise that defendant fraudulently purchased. Additionally, because the merchandise was fraudulently obtained and Rainey admitted to helping defendant load it, the trial court did not clearly err in finding that this was a "situation consisting of more than one person violating the law while part of a group." *Jones*, 299 Mich App at 287. The fact that Rainey Claimed a lack of knowledge regarding the fraud and was not charged is irrelevant to defendant's role in directing the activity. Accordingly, in considering the entire criminal

transaction, MCL 777.44(2)(a), and all of the evidence on the record, *Johnson*, 298 Mich App at 131, the trial court did not clearly err in concluding that defendant was the leader in a multiple-offender situation, and thus, did not err in assessing 10 points for OV 14.[2]

Next, defendant argues that the trial court erred by assessing 10 points for OV 19 (interference with the administration of justice), MCL 777.49(c), because the reason for defendant's failure to attend his sentencing hearing was his incarceration in Ohio. We are skeptical of the trial court's scoring 10 points for OV 19 when the alleged interference with the administration of justice was not based on a deliberate act by the defendant, see *People v Hershey*, 303 Mich App 330, 343-344; 844 NW2d 127 (2013) (listing instances where this Court and the Michigan Supreme Court have found "conduct to constitute an interference or attempted interference with the administration of justice"), and defendant in this case could not have reasonably known the effects of his actions, see *People v Endres*, 269 Mich App 414, 421; 711 NW2d 398 (2006), overruled on other grounds in *Hardy*, 494 Mich at 43 n 18 (upholding the trial court's assessment of 10 points for OV 19 based on threats the defendant made to the victim, regardless of the defendant's intent in making the threats, because the "defendant knew" when he made the threats that the victim would be the primary witness against him if criminal charges were filed and the defendant's threats "might have dissuaded [the victim] from coming forward . . . thus preventing the discovery and prosecution of [the] defendant's crime").[3]

However, regardless of whether the trial court erred by assessing 10 points for OV 19, resentencing is still not required. "If a scoring error does not alter the guidelines range, resentencing is not required." *People v Rhodes*, 305 Mich App 85, 91; 849 NW2d 417 (2014) (quotation marks and citation omitted). In this case, defendant's guidelines range would not be affected if OV 14 remained at 10 points but OV 19 was assessed zero points. Defendant was convicted of a Class D crime. His total prior record variable (PRV) score was 100, placing him in PRV level F. There is no dispute regarding defendant's PRV level. His total OV score was 45, which placed him in OV Level IV. Assuming that the trial court erred by assessing 10 points for OV 19, defendant's resulting OV score of 35 would still place him in OV Level IV. MCL 777.65. Therefore, defendant's guidelines range, as a fourth-offense habitual offender, would remain unchanged at 34 to 134 months' imprisonment. MCL 777.65; MCL 769.12. Therefore, resentencing is not required. See *Rhodes*, 305 Mich App at 91.

---

[2] This Court has expressly rejected defendant's argument that a defendant may not be assessed points for OV 14 when no other person was charged with a crime arising out of the same facts. See *Dickinson*, slip op at 10 (holding that a defendant may be assessed points for OV 14 "even though he was accompanied by only one other person and even though the other person was not charged in connection with the crime for which the defendant was convicted").

[3] Despite our skepticism, we note that defendant's argument that the trial court necessarily erred by assessing 10 points for OV 19 because defendant did not intend to miss his sentencing hearing is meritless. See *Endres*, 269 Mich App at 422 ("*Regardless of defendant's intent* in making his threats, the record supports the conclusion that those threats resulted in the interference with the administration of justice[.]") (Emphasis added).

Defendant also raises several issues on appeal in a Standard 4 brief.[4]  Notably, this Court's order granting leave to appeal specifically limited the issues that may be addressed on appeal, stating as follows:

> The Court orders that the delayed application for leave to appeal is GRANTED, limited to Issue I raised in the application regarding points assessed for Offense Variables 14 and 19.  MCR 7.205(E)(4).  The time for taking further steps in this appeal runs from the date of the Clerk's certification of this order.  MCR 7.205(E)(3).
>
> In all other respects, and specifically as to the issue of whether the trial court abused its discretion in denying defendant's motion to withdraw his guilty plea, the delayed application is DENIED for lack of merit in the grounds presented.  [*People v Shaw*, unpublished order of the Court of Appeals, entered April 21, 2017 (Docket No. 337313).]

The order referenced MCR 7.205(E)(4), which states, "Unless otherwise ordered, the appeal is limited to the issues raised in the application and supporting brief."  The order specifically restricted the issues on appeal to potential scoring errors for OV 14 and 19.  Because defendant's Standard 4 brief argues issues outside of the limited scope of this appeal, we need not address it.

However, even were we to address defendant's arguments, they have no merit.  Defendant first argues that his constitutional rights were violated because he was racially profiled by investigating officers.  In order to establish that an officer profiled a defendant in violation of the defendant's constitutional rights, it must be shown that the discrimination was "intentional and purposeful," meaning that the defendant was "singled" out for violating the law on an impermissible basis, such as race or religion.  See *People v Ford*, 417 Mich 66, 102; 331 NW2d 878 (1982).  "Intentional or purposeful discrimination will not be presumed and there must be an affirmative showing of clear and intentional discrimination."  *Oakland Co Prosecuting Attorney v 46th Judicial Dist Judge*, 76 Mich App 318, 331; 256 NW2d 776 (1977).

Based on a thorough review of the record, there is no evidence to support defendant's contention that he was racially profiled.  Officer James Gilmer saw a man standing outside a closed restaurant at 11:30 p.m. at night.  A black minivan backed up to the restaurant's front doors and turned its headlights off, the driver briefly spoke to the man that was standing outside, and then the van drove off.  Officer Gilmer followed the van to a nearby Holiday Inn Express, where the van drove around the empty parking lot one time and then parked in front of the hotel.  A short time later, a truck with a trailer attached pulled up next to the van, and the driver of the black minivan got out of the van and into the truck.  The officer then pulled over a different car, and when he went to check back on the van and truck, both were gone.  Officer Gilmer was informed by a different officer about an ongoing investigation into a case of fraud at the restaurant that Officer Gilmer saw the black minivan pull up to earlier in the night.  Officer Gilmer subsequently attempted to locate the van, which he eventually did at a Marriott Hotel.

---

[4] Michigan Supreme Court Administrative Order 2004-6, Standard 4.

-4-

Also in the parking lot was the truck with the trailer that Officer Gilmer witnessed earlier. Officer Gilmer approached the vehicles and shined a light into both; in the van, he saw that it was full of merchandise still in its packaging, and in the truck he saw electronic equipment "of some sort." Based on what the officer saw and the reports of fraud in the area, Officer Gilmer contacted Detective Sergeant Scott Singleton, who told the officer to check local stores for suspicious activity. Officer Gilmer questioned employees at a local Meijer, and a cashier told the officer that a man had tried to purchase three $200 gift cards with a credit card and, when the store refused to sell the gift cards because the sale needed to be in cash, the man left and got into a truck with a trailer. Officer Gilmer then contacted Detective Singleton again. Detective Singleton ran the plate of the truck in the Marriott parking lot and found that the owner—defendant—had a long criminal history of fraud. Detective Singleton went to the Marriott parking lot and looked inside both vehicles. In the black minivan, the detective saw unopened merchandise, and in the truck the detective saw a laptop computer connected to what he recognized as a card reader, which he knew from his experience was used to make fake identifications or credit cards for fraudulent use. Defendant was eventually apprehended, and he subsequently confessed during an interview. On this record, there is no evidence that defendant was singled out because of his race. See *Ford*, 417 Mich at 102. Accordingly, we reject defendant's argument that he was racially profiled.[5]

Next, defendant contends that he received ineffective assistance of counsel because defense counsel advised him to lie about where his crimes were committed "in order to meet the terms of a plea agreement." To prevail on a claim of ineffective assistance, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Because this issue is unpreserved, our review is limited to mistakes apparent on the record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). There is no evidence in the record to support defendant's contention that counsel advised him to lie about where his crimes were committed. The only evidence on the record is that defendant testified, under oath, that the crimes were committed in Livingston County. Defendant's contention that he perjured himself to gain the benefits of a favorable plea deal simply has no support in the record. As such, defendant has failed to establish the factual predicate of his claim, and we have no basis to

---

[5] Defendant complains that Officer Gilmer did not give any "physical descriptions of any alleged suspects other than they were 'Black males.'" However, as is evident from our summation of the evidentiary hearing, the investigation was not based on any suspect's physical description. Rather, the investigation was based on observed suspicious behavior—particularly the odd movements of the black minivan—coupled with known reports of credit card fraud in the area connected with the restaurant that the officer saw the van at. As the investigation progressed, none of the indications of potentially criminal activity were related to any potential suspect's physical description; officers observed merchandise and a card reader in the vehicles that were earlier involved in suspicious activity, and an investigation into local surrounding stores revealed evidence of suspicious activity consistent with credit card fraud that was connected to a vehicle matching the description of one of the suspect vehicles.

conclude that counsel was ineffective. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (stating that the defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel").[6]

Lastly, defendant challenges the sufficiency of the evidence to support his convictions for using a computer to commit a crime because, according to defendant, he did not commit the crime in Livingston County and, therefore, the trial court did not have jurisdiction. Defendant does not contest that he entered an "understanding, voluntary, and accurate plea." *People v Brown*, 492 Mich 684, 688-689; 822 NW2d 208 (2012). Rather, he attempts to attack his plea by arguing that he lied under oath. This argument is meritless; defendant cannot testify to facts before the trial court and then attempt to undermine that testimony on appeal by claiming that it was untrue. "Any other conclusion would be contrary to the rule that defendants cannot 'harbor error as an appellate parachute.' " *People v Pipes*, 475 Mich 267, 278 n 30; 715 NW2d 290 (2006), quoting *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000).

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens

---

[6] Defendant also argues that counsel's "advice" to lie under oath should be reviewed under the standard in *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984). However, as stated, the claimed deficiency is "not apparent from the record," and, therefore, under the *Cronic* standard as well, it is "not subject to our review." *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).