FORD MOTOR COMPANY v STATE TAX COMMISSION

Docket No. 57787. Argued February 2, 1977 (Calendar No. 13).—
Decided July 18, 1977.

Ford Motor Company challenged its 1971 personal property tax
assessment by the City of Highland Park and the Highland
Park School District and filed its objections to the method used
to assess the company's inventory with the city's board of
review; the objections were overruled. The plaintiff seeks to
elect to report its inventory value by an average monthly
method in other assessment districts but by a "tax day" method
in the City of Highland Park. The State Tax Commission
sustained the method of assessment with modification solely as
to valuation. The Court of Appeals, V. J. Brennan, P. J., and
J. H. Gillis and D. F. Walsh, JJ., reversed (Docket No. 19600).
Defendants Highland Park and Highland Park School District
appeal. *Held:*

1. The statute in plain words refers solely to assessing
districts, and provides for an election by any taxpayer owning
certain inventories in an assessing district. An owner of inven-
tories in more than one assessment district may elect under the
statute to be assessed on tax day in one assessing district and
elect to be assessed on the average monthly inventory in
another.

2. So long as each taxpayer with inventories in the assessing
district has the same right of election and is taxed at the same
rate after election, the statute withstands the tests of constitu-
tionality requiring uniformity of taxation. The statute does not
remove property from the tax rolls, nor does it apply only to a
particular group. It provides an election for assessment for
owners of inventory which will be taxed at a uniform rate
within the assessing district.

3. The wording of the statute is clear. The tax is uniformly
applied. The cases relied upon by defendant are inapposite as to

REFERENCES FOR POINTS IN HEADNOTES

[1, 5–7, 10, 13] 72 Am Jur 2d, State and Local Taxation §§ 167, 264,
265.
[2–4, 8–12] 71 Am Jur 2d, State and Local Taxation § 707.
   73 Am Jur 2d, Statutes § 142 *et seq.*

these facts. Defendant's reliance upon an administration "rule" which was never promulgated and is not part of the record is misplaced.

Justice Williams, joined by Justice Blair Moody, Jr., dissented. He wrote that:

1. The language of the statute affording the election of valuation method for inventory is not so clear and unambiguous as to preclude judicial interpretation. It is, in fact, equally compatible with two interpretations, one constitutional and the other unconstitutional. The Constitution requires not only uniformity in the rate of taxation, but also uniformity in the burden of taxation and the mode of assessment.

2. The statute was amended in the year following and as a direct result of a decision of the Supreme Court which held that one city could not impose a different assessment method on the taxpayer than that used in another taxing district, without amendment of the portion relating to the tax day and average monthly alternatives. The Legislature is therefore presumed to have adopted the construction of the statute in that decision. Longstanding administrative interpretation requiring the taxpayer to use the same method in all assessment districts in the state is significant in the construction of the statute.

3. The taxpayer may elect to be assessed by the average monthly valuation method in all districts or to be assessed by the tax day method in all districts, but cannot use different methods in different districts. To find otherwise would not only violate the constitutional rule of uniformity of taxation, but would be contrary to prior judicial, legislative and administrative interpretation, as well as common sense, which demands a method of assessment which does not lend itself to manipulations of inventory for tax rather than manufacturing purposes.

Affirmed.

63 Mich App 577; 234 NW2d 711 (1975) affirmed.

OPINION OF THE COURT

1. TAXATION—PERSONAL PROPERTY—ASSESSMENT METHOD—RIGHT OF
ELECTION.

The provision of the General Property Tax Act requiring an assessing district to assess an owner for all tangible personal property located in the township on tax day unless the owner of inventory elects to be assessed on an average monthly inventory allows an owner of inventories in more than one assessment district to elect under the statute to be assessed on

tax day in one assessing district and to be assessed on the average monthly inventory for the preceding year in another (MCL 211.13; MSA 7.13).

2. TAXATION—STATUTORY CONSTRUCTION.
Tax laws are to be construed liberally in favor of the taxpayer.

3. STATUTES—CONSTRUCTION—CONSTITUTIONAL LAW.
A statute must be afforded that meaning which is consistent with its constitutionality if one interpretation finds a statute constitutional and another unconstitutional.

4. TAXATION—STATUTES—CONSTRUCTION.
The Supreme Court may not vary the clear and unequivocal meaning of the words used in a statute and determine tax matters solely on the grounds of unwisdom or of public policy.

5. TAXATION—PERSONAL PROPERTY—ASSESSMENT METHOD—CONSTITUTIONAL LAW—UNIFORMITY.
The provision of the General Property Tax Act which permits an owner of inventory in more than one assessing district to elect assessment for personal property taxes on an average monthly inventory or on tax day in any of the districts does not violate the constitutional requirement of uniformity in taxation so long as each taxpayer with inventories in each assessing district has the same right of election and is taxed at the same rate after his election (Const 1963, art 9, § 3; MCL 211.13; MSA 7.13).

DISSENTING OPINION

WILLIAMS and BLAIR MOODY, JR., JJ.

6. TAXATION—PERSONAL PROPERTY—ASSESSMENT METHOD—RIGHT OF ELECTION.
*A taxpayer owner of inventories may elect to be assessed under a provision of the General Property Tax Act on the average monthly valuation method in all tax districts or be assessed on the tax day method in all districts, but cannot use different methods in different districts (MCL 211.13; MSA 7.13).*

7. TAXATION—CONSTITUTIONAL LAW—UNIFORMITY.
*The Constitution requires uniformity of general ad valorem taxation of real and tangible personal property not only in the rate of taxation, but also in the burden of taxation and in the mode of assessment (Const 1963, art 9, § 3).*

8. TAXATION—STATUTES—CONSTRUCTION.

> *Revenue laws containing doubtful language are to be strictly construed against the taxing authority, but at the same time they should receive a reasonable construction with a view to carrying out the legislative intent; therefore, when there is doubt as to the interpretation of a revenue statute, that doubt is to be resolved in favor of the taxpayer only if such resolution is consistent with the purpose of the Legislature.*

9. STATUTES—CONSTRUCTION.

> *The manifest intent of the Legislature must prevail over the literal sense of the terms used in the construction of a statute.*

10. TAXATION—STATUTES—CONSTRUCTION—CONSTITUTIONAL LAW.

> *The language of the General Property Tax Act which permits the taxpayer to elect the average monthly valuation method of assessment of inventory or the tax day method is not so clear and unambiguous as to preclude judicial interpretation; it is equally compatible with two interpretations, one of which would permit a separate election for each assessing district and the other of which would require one election for all assessing districts in which the taxpayer owns inventory, and the Constitution requires an interpretation of the statute which results in uniform taxation, if possible (Const 1963, art 9, § 3; MCL 211.13; MSA 7.13).*

11. STATUTES—CONSTRUCTION—COMMON LAW—LEGISLATIVE INTENT.

> *It is presumed that when a statute has been re-enacted or amended in light of prior judicial construction, and the language subjected to such construction is not legislatively changed, the Legislature adopted such construction.*

12. STATUTES—CONSTRUCTION—ADMINISTRATIVE INTERPRETATION.

> *The construction given to a statute by those charged with executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons.*

13. TAXATION—CONSTITUTIONAL LAW—UNIFORMITY.

> *The constitutional rule of uniformity of taxation demands a method of assessment which does not lend itself to manipulations of inventory for tax rather than manufacturing purposes (Const 1963, art 9, § 3).*

*F. A. Stocking* and *Loren M. Opper* for plaintiff.

*Dickinson, Wright, McKean, Cudlip & Moon* (by

*George E. McKean* and *Robert L. Schwartz)* for defendant Highland Park.

*Miller, Canfield, Paddock & Stone* (by *Samuel J. McKim, III)* for defendant Highland Park School District.

COLEMAN, J. This case concerns MCLA 211.13; MSA 7.13[1], a provision of the General Property Tax Act. The section requires an assessing district to assess an owner for all tangible personal property located in the township on tax day unless the owner elects to be assessed on the basis of an average monthly inventory. If the owner elects, the statute provides that a sworn statement be filed which states the total inventory for each of the preceding 12 months. The assessing district is then required to assess the property on the basis of the average monthly inventory.

May an owner of inventories in more than one assessment district elect under § 13 to be assessed on tax day in one assessing district and elect to be assessed on the average monthly inventory in another? The Court of Appeals said yes. We affirm.

The wording of the statute is clear. The tax is

---

[1] "All tangible personal property, except as provided in section 14, shall be assessed to the owner thereof, if known, in the township in which it is located on the tax day.

\* \* \*

"Inventories. of goods, wares, materials, merchandise and supplies such as are commonly used in trade or commerce or manufacture shall, upon the filing by the owner thereof of a sworn statement with the assessing officer showing the total of such inventories for each of the preceding 12 months ending December 31, be assessed on the basis of the average monthly inventory for such 12-month period. The average monthly inventory shall be computed on the basis of the number of months during which said inventories of goods, wares, merchandise and supplies had a taxable situs in the assessing district. No assessing officer shall be restricted to any particular period in the preparation of the assessment roll but may survey, examine or review properties at any time prior to or after said tax day."

uniformly applied. The cases relied upon by defendant are inapposite as to these facts. Defendant's reliance upon an administration "rule" which was never promulgated and is not part of the record is misplaced.

# I

During 1970, Ford Motor Company had inventories located in Highland Park. It elected to have the property assessed on the basis of what was located in the city on tax day (12/31/70). Highland Park maintained that because Ford elected to be assessed on the average monthly inventory basis in other assessment districts within Wayne County, it was required to report its inventory in Highland Park on the same basis. The State Tax Commission (STC) approved the city's action.

The Court of Appeals reversed. It held that "the plain meaning of the statute is clear and that it permits a taxpayer to elect to have its inventory in a particular assessing district assessed according to the average monthly inventory without regard to the method selected in another assessing district". 63 Mich App 577, 584; 234 NW2d 711 (1975).

STC has not participated in this appeal. The position of defendant-appellant was briefed and argued by the City of Highland Park and the School District for the City of Highland Park.

# II

The city and school district argue that the statute should be read to construe some singular designations as plural, *i.e.,* "the assessing officer" and "the assessing district". They point to the statutory words as meaning "all inventories"

wherever located. They cite MCLA 8.3b; MSA 2.212(2):

"Every word importing the singular number only may extend to and embrace the plural number and every word importing the plural may be applied to and limited to the singular number."

It is not clear whether defendants would apply the requirement of one election for all assessment districts within a county or the entire state. Their brief speaks at one time of the county and at another of the state, but, logically, any distinction would be without a difference.[2]

The taxpayer counters this argument by stating that the words "all inventories" appearing in the average monthly inventory option of § 13 must be read in context with the following words, "in the assessing district". Also the statute provides for tax day assessment of personalty "in the township in which it is located".

Plaintiff also argues that § 13, which was intended as a tax relief measure, could result in increased taxes if defendant's theory is accepted. It was explained that "[t]he option is provided to each taxpayer because the seasonal nature of business or other fortuitous circumstances may cause inventory quantities as of the tax day to be greater than the quantities generally maintained throughout the preceding year".

The statute is plain and unequivocal on its face.[3]

---

[2] Defendants say that a taxpayer may make an independent election in each county of the state where it has inventories. This is inconsistent with another contention that a taxpayer must make one statewide election.

[3] Defendants place considerable weight upon an administrative rule which was never promulgated and which they admit "is not a part of the record on appeal in this cause". We will not discuss this argument.

If tax laws are to be construed liberally in favor of the taxpayers,[4] we cannot so strain the statute's clear meaning so as to give credence to defendant's arguments. Ford persuasively argues that the statutory wording would present problems if construed as suggested by defendants. For example, which election would be the one binding upon the taxpayer for the whole state (the first one made, the one adding up to the least overall taxes, etc.)? In this case, which assessing unit would prevail? There are no proofs of time of other elections or of the least burdensome tax if one election must be made for the county or state.

However, defendants further argue that if one interpretation finds a statute constitutional and another unconstitutional, we must afford to the statute that meaning which is consistent with constitutionality.[5] We agree with the rule of construction. We do not need to apply the rule to decide this case.

### III

Defendants maintain that construction of § 13 according to its plain meaning must lead to the conclusion that it violates Const 1963, art 9, § 3:

---

[4] *Ready-Power Co v Dearborn,* 336 Mich 519; 58 NW2d 904 (1953), *FM Sibley Lumber Co v Department of Revenue,* 311 Mich 654; 19 NW2d 132 (1945), *Detroit v Phillip,* 313 Mich 211; 20 NW2d 868 (1946), *Consumers Power Co v Corporation & Securities Commission,* 326 Mich 643; 40 NW2d 756 (1950).

[5] *State Bar of Michigan v Lansing,* 361 Mich 185, 195; 105 NW2d 131 (1960), where this Court stated:

"The general principle has repeatedly been invoked that if a legislative enactment is of such a character that it is subject to differing interpretations, one of which would result in the act being held unconstitutional and the other permitting its being upheld as valid, the latter alternative will be accepted. In other words, the presumption is that the legislature would not intend to pass an act in contravention of a constitutional restriction or otherwise invalid."

"The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. The legislature may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem taxation. Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates."

In asking that the Court of Appeals be reversed, defendants rely primarily on *Teagan Transportation Co v Detroit Board of Assessors,* 139 Mich 1; 102 NW 273 (1905); on *Ready-Power Co v Dearborn,* 336 Mich 519; 58 NW2d 904 (1953); and on *Titus v State Tax Commission,* 374 Mich 476; 132 NW2d 647 (1965).

In *Teagan,* a section of the general tax law permitted the personal property of corporations engaged in maritime commerce or navigation to be assessed "in the city, village or township, * * * stated in their * * * articles of association * * * to be the location of their general office for business". The property of other corporations was assessed at the place where they transacted their principal business.

The Teagan Company was engaged in maritime commerce or navigation. Its business "which was not done on its boats was done in the city of Detroit". The articles of incorporation named Hamtramck "as the location of their general offices for business". The company sought mandamus "compelling [Detroit] to strike from the asessment rolls an assessment on account of certain steamboats owned by it".

Our Court found that Teagan's "principal business was not transacted at the place named in the articles of incorporation". The question then became whether the legislative provision for maritime companies violated the constitutional provision requiring a uniform rule of taxation. The Court said it did because "it clearly taxes * * * the property of corporations engaged in maritime commerce and navigation at a rate different from all other property of the same class". It was no defense to say the Legislature has the power to determine taxable situs. The Court concluded "that the legislature, in determining the situs for the taxation of personal property, must regard the constitutional requirement of uniformity, and the disregard of that requirement makes the law under consideration unconstitutional and void".

The Court of Appeals found *"Teagan* to be totally inapposite to the facts of the instant case". Ford distinguishes *Teagan* by noting that *"all* inventory taxpayers may make an election under [MCLA 211.13; MSA 7.13]". The tax applies equally to all members of the class. Ford argues that "nonuniformity of taxation occurs when a taxpayer is compelled to elect the average monthly inventory on a statewide basis because value which the taxpayer never possessed may be created".

Unlike *Teagan,* MCLA 211.13; MSA 7.13 does not remove property from the tax rolls nor does it apply only to a particular group. It provides an election for owners of "[i]nventories * * * such as are commonly used in trade or commerce or manufacture". The property will be taxed and at a uniform rate within the assessing district; the statute only provides an election for assessment.

In *Ready-Power v Dearborn,* the company manu-

factured electric generating units in Detroit and stored some personal property in Dearborn. It conducted business on a July 1 to June 30 fiscal year. MCLA 211.13; MSA 7.13 then permitted a company to elect to be taxed on a fiscal- or calendar-year basis.

In January 1952, Dearborn asked for a general property statement covering the last fiscal year. The company had not stored property in the city during that time although it had in the last four months of 1951. Dearborn taxed the company for that property.

On appeal, the Court said the taxpayer was permitted to file on either a calendar- or fiscal-year basis. It found "Ready-Power was entitled * * * to make its return on the basis of its operations". The company had a "right of election". It chose to be taxed on a fiscal-year basis and "[t]ax officials may not deprive taxpayers of this right of election".

Ford contends that the "critical fact in *Ready-Power*" is that the taxpayer *"voluntarily elected* inventory valuation methods which were the same for the two districts", but Dearborn did not honor the election. Double taxation for four months could have resulted. In our case, Ford states that despite the election, Highland Park "is *compelling* [the company] to use an inventory valuation method which serves to *increase* its tax liability".

The Court of Appeals said *Ready-Power* was "factually distinguishable" and we agree.

However, some generally applicable wisdom is to be gleaned from the opinion. MCLA 211.13; MSA 7.13 gives Ford a "right of election" on how its inventory will be assessed in such assessing district. Like Ready-Power Co, Ford is "entitled * * * to make its return on the basis of its operations".

The *Ready-Power* Court noted that permitting Dearborn to tax the company on a calendar rather than a fiscal-year basis would violate the uniformity guaranty. All others of the class in Dearborn could elect, but Ready-Power Company was prevented from exercising its election. The Court also said it "may not vary the clear and unequivocal meaning of the words used in a statute and determine tax matters solely on the grounds of unwisdom or of public policy".

The taxpayers in *Titus v State Tax Commission* claimed "about 20% of the real property in Lansing, including their own, [was assessed] by a method * * * different from that used" on the other real property within the assessment district. The Court found this to be true and said "the variant methods used deprived plaintiffs of the guarantee of uniformity of taxation provided by" the state Constitution.

The Court of Appeals distinguished *Titus* saying it did not involve an election under MCLA 211.13; MSA 7.13. Ford argues that, at most, *Titus* prohibits the use of both methods of inventory valuation in the same assessing district. That is not a problem here.

There is no suggestion in this case that Ford transferred inventories for other than business reasons, that the returns were made other than "on the basis of its operations" *(Ready-Power, supra,* p 524), or that tax considerations motivated the transfers of inventories reflected in the returns.

IV

We conclude that MCLA 211.13; MSA 7.13 provides for an election by any taxpayer owning

certain inventories located within an assessing district. The taxpayer may elect to be taxed upon inventories so situated on tax day or upon the monthly inventory average for the preceding year.

If Ford, like any other taxpayer, had inventories only in Highland Park, it, as all others, would have the same election and the same rate (including Highland Park School District millage) would apply. Any other taxpayer having inventories in more than one assessing district, like Ford, would have the same election in each separate assessing district and that particular tax rate (includings its particular school millage) would fall uniformly upon the taxpayer. Ford's assessment is also subject to equalization—a technique promoting uniformity within and between counties.

The statute in plain words refers solely to assessing districts. There has been no demonstrated violation of the uniformity standards discussed in *Allied Supermarkets, Inc v Detroit,* 391 Mich 460; 216 NW2d 755 (1974), or *Ann Arbor Twp v State Tax Commission,* 393 Mich 682; 227 NW2d 784 (1975).

So long as each taxpayer with inventories in the assessing district has the same right of election and is taxed at the same rate after election, the statute withstands the tests of constitutionality.

The statute gives Ford an election which it can exercise in each assessing district of the state where its inventories may lie.[6]

We affirm the Court of Appeals.

KAVANAGH, C. J., and LEVIN, FITZGERALD, and RYAN, JJ., concurred with COLEMAN, J.

---

[6] This case does not require us to consider the Single Business Tax Act. That legislation may limit the effect of our decision. *See* MCLA 208.131, *et seq.;* MSA 7.558(131), *et seq.*

Williams, J. *(for reversal).* Whether a taxpayer may elect the average monthly valuation method of assessment in one district and be assessed on the tax day method in another district under § 13 of the General Property Tax Act, MCLA 211.13; MSA 7.13, or must be assessed by one or the other method in both districts, is the question raised by this case.

We hold that the taxpayer may elect to be assessed on the average monthly valuation method in all districts or be assessed on the tax day method in all districts, but cannot use different methods in different districts for each and all of the following four reasons: first, *Ready-Power Co v Dearborn,* 336 Mich 519; 58 NW2d 904 (1953), so holds; second, the uniform assessment provision of the Const 1963, art 9, § 3 so requires; third, long-standing administrative interpretation and legislative acquiescence so indicate; and fourth, common sense so directs. Consequently, we reverse.

## I—Facts

During the 1970 calendar year, Ford Motor Company had inventory in various assessing districts within the State of Michigan, including the Cities of Highland Park and Dearborn, both located in the County of Wayne. For personal property tax purposes, pursuant to § 13, Ford filed its 1971 Sworn Personal Property Statement[1] with the City of Dearborn electing to report on the average monthly value of its inventory. Ford's Personal Property Statement filed with the City of Highland Park, however, reported its inventory value for 1970 as of the tax day, December 31, 1970.[2]

---

[1] The sworn statement, required under § 13, is described in §§ 18 and 19 (MCLA 211.18; MSA 7.18 and MCLA 211.19; MSA 7.19).

[2] Plaintiff, Ford Motor Company, contests whether its election in

Ford was subsequently advised by the City of Highland Park that, since it had elected the average monthly inventory method basis in other assessing districts, it was required to so report its inventory in that city.

The city assessed Ford at its best estimate of the average value of Ford's personal property during the preceding 12-month period. Ford unsuccessfully appealed to both the city's board of review and the State Tax Commission. The State Tax Commission, while upholding the necessity for the uniform use of the average monthly inventory method, adjusted downward the assessment of Ford's personal property to reflect its actual average monthly inventory values.[3]

Ford applied for leave to appeal to the Court of Appeals from the decision of the State Tax Commission. Leave was granted on March 1, 1974.

The Court of Appeals reversed the decision of the State Tax Commission, holding that Ford might be assessed on tax day in one assessment district and elect the average monthly inventory assessment in another district under § 13 of the General Property Tax Act.[4]

We granted leave to appeal.[5]

---

Dearborn was made prior to its election in Highland Park. We do not find this issue relevant to the instant decision which deals solely with the propriety of inconsistent elections within the state. The State Tax Commission noted the controversy as to assessment method to be used only as follows: "Notes: Avg. inv. must be used".

[3] The value of Ford's personal property within the City of Highland Park as of the tax day, December 31, 1970, was $24,737,962. The average value, as ultimately determined by a State Tax Commission audit, of Ford's personal property within the 12-month period ending December 31, 1970, was $29,648,553. *See* the Court of Appeals decision in the instant case, *Ford Motor Co v State Tax Commission,* 63 Mich App 577, 581–582; 234 NW2d 711 (1975).

[4] *Ford Motor Co v State Tax Commission,* 63 Mich App 577; 234 NW2d 711 (1975).

[5] An additional issue decided by the Court of Appeals, regarding the manner in which Ford's property was assessed, is not before this Court.

## II—STATUTE IN QUESTION

This case hinges on the proper interpretation of the General Property Tax Act, § 13. Section 13 provides as follows:

"Sec. 13. All tangible personal property, except as provided in section 14, shall be assessed to the owner thereof, if known, in the township in which it is located on the *tax day*.

\*   \*   \*

"Inventories of goods, wares, materials, merchandise and supplies such as are commonly used in trade or commerce or manufacture shall, upon the filing by the owner thereof of a sworn statement with the assessing officer showing the total of such inventories for each of the preceding 12 months ending December 31, be assessed on the basis of the *average monthly inventory for such 12-month period.* The average monthly inventory shall be computed on the basis of the number of months during which said inventories of goods, wares, merchandise and supplies had a taxable situs in the assessing district. No assessing officer shall be restricted to any particular period in the preparation of the assessment roll but may survey, examine or review properties at any time prior to or after said tax day." (Emphasis added.)

### III—*Ready-Power Co v Dearborn*

This Court in *Ready-Power,* by unanimous decision, under a prior but essentially similar enactment of § 13 and under essentially similar facts, held that the taxpayer could not be assessed by the average monthly inventory method on a fiscal-year basis in one district and on a calendar-year basis in another district, although § 13 permitted the taxpayer to report either for a fiscal year or for a calendar year.

That comparable statutory language in *Ready-Power* is essentially similar can be seen by comparing the following with the quotation of the present § 13 in part II of this opinion:

"Sec. 13. All personal property, except as hereinafter provided, shall be assessed in the township in which the owner resides on the first day of January of the year for which the assessment is made.

" * * * Provided, That inventories of goods, wares, materials, merchandise and supplies such as are commonly used in trade or commerce or manufacture shall, upon the filing by the owner thereof of a sworn statement with the assessing officer showing the total of such inventories for each of the 12 months preceding said first day of January, or each of the months ·of the last preceding fiscal year of such owner, be assessed on the basis of the average monthly inventory for such 12-month period or fiscal year * * * ." 336 Mich 523.

The comparable facts are that the taxpayer uniformly elected the average monthly inventory method for its fiscal year ending June 30th. It filed a property statement in Detroit showing monthly inventory and filed in Dearborn showing no inventory. Dearborn required the taxpayer to file under protest that it did have property in Dearborn during the calendar year, but only in months after the termination of taxpayer's fiscal year.

It is obvious that the facts in *Ready-Power* raise the same principle of uniformity of assessment method that the instant case does. In both cases, one party insisted on the same assessment method in both districts and the other party sought to impose a different assessment method in one district to acquire a tax advantage. It is true that in *Ready-Power* the party proposing the different assessment method was the city, and in the instant case it is the taxpayer, but the legal effect is

the same as will be more fully developed in part
IV of this opinion.

## IV—UNIFORMITY IN MODE OF ASSESSMENT

### A. Constitutional Requirement of Uniform Assessment

Article 9, § 3 of the Michigan Constitution re-
quires uniform general ad valorem taxation of real
and tangible personal property:

"The legislature shall provide for the uniform general
ad valorem taxation of real and tangible personal prop-
erty not exempt by law. The legislature shall provide
for the determination of true cash value of such prop-
erty; the proportion of true cash value at which such
property shall be uniformly assessed, which shall not,
after January 1, 1966, exceed 50 percent; and for a
system of equalization of assessments."

The constitutional rule of uniformity, as ex-
pressed in art 9, § 3, has been correctly interpreted
to mean not only uniformity in the rate of taxa-
tion, but also uniformity in the burden of taxation,
*Wood v Village of Rockwood,* 328 Mich 507, 511;
44 NW2d 163 (1950), and uniformity in the mode
of assessment. *Titus v State Tax Commission,* 374
Mich 476, 480; 132 NW2d 647 (1965).

The election afforded under § 13 is an election as
to the mode of assessment of personal property.
The necessity for uniformity in the same was
expressed by this Court in *Titus, supra,* in which
the Lansing assessor had reappraised 20% of the
real property in Lansing, beginning a plan
whereby, over several years, all of the real prop-
erty in Lansing would be reappraised. The taxpay-

ers affected by the reappraisal challenged the use of two different modes of assessment within the City of Lansing.

This Court found it unnecessary to decide whether either appraisal method then in use in the city conformed to the legislative mandate that property be assessed at its "true cash value," because it found it was "sufficient for [the] purpose of decision that the variant methods used deprived plaintiffs of the guarantee of uniformity of taxation provided by * * * the Constitution". The Court further quoted from *Exchange Bank of Columbus v Hines,* 3 Ohio St 1, 15 (1853), adopted in *Huron-Clinton Metropolitan Authority v Boards of Supervisors of Five Counties,* 304 Mich 328, 335–336; 8 NW2d 84 (1943):

" 'What is meant by the words "taxing by a uniform rule?" And to what is the rule applied by the Constitution? No language in the Constitution, perhaps, is more important than this; and to accomplish the beneficial purposes intended, it is essential that they should be truly interpreted, and correctly applied. "Taxing" is required to be "by a uniform rule;" that is, by one and the same unvarying standard. Taxing by a uniform rule requires uniformity not only in the rate of taxation, but also uniformity in the mode of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation; and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation. But this is not all. The uniformity must be coextensive with the territory to which it applies. If a State tax, it must be uniform over all the State; if a county, town, or city tax, it must be uniform throughout the extent of the territory to which it is applicable.' " 374 Mich 480.

The Court, therefore, held that the use of two different modes of assessing similar real property

located within Lansing violated the rule of uniformity guaranteed by the Constitution.[6]

In *Ready-Power, supra,* we further discussed the rule of uniformity with respect to § 13. This Court stated that:

"If the city's argument is to be approved, we must, in the same breath, approve a violation of the constitutional guaranty of uniformity, in that we must admit that it is proper for Detroit to tax plaintiff on a fiscal year basis and permit the city of Dearborn to tax on a different basis." 336 Mich 526.

The Court explicitly refused to hold that the language affording an alternative in § 13 allowed such a result.

### B. Can the Statute be Construed to Preserve its Constitutionality?

A statute must always be read, if possible, to conform with constitutional mandates.

"The general principle has repeatedly been invoked that if a legislative enactment is of such a character that it is subject to differing interpretations, one of which would result in the act being held unconstitutional and the other permitting its being upheld as valid, the latter alternative will be accepted. *In other words, the presumption is that the legislature would not intend to pass an act in contravention of a constitutional restriction or otherwise invalid."* (Emphasis added.) *State Bar of Michigan v Lansing,* 361 Mich 185, 195; 105 NW2d 131 (1960).

---

[6] The Court's opinion in *Titus* has been called " * * * a succinct exposition of classic proportions on uniformity of general property taxation". Stanley & Tunstall, *State and Local Taxation,* 12 Wayne L Rev 160, 165 (1965). *See also,* OAG, 1971–1972, No 4719, pp 42, 45 (May 6, 1971).

In interpreting language contained in revenue statutes, general rules of construction have been established. As summarized in the WILLIAMS opinion for reversal in an equally divided court, in *Borden, Inc v Dep't of Treasury,* 391 Mich 495, 513–517; 218 NW2d 667 (1974), revenue laws containing doubtful language are to be strictly construed against the taxing authority. *Ecorse Screw Machine Products Co v Corporation & Securities Commission,* 378 Mich 415, 418; 145 NW2d 46 (1966); *Ready-Power Co v Dearborn,* 336 Mich 519, 525; 58 NW2d 904 (1953); *Hart v Dep't of Revenue,* 333 Mich 248, 252; 52 NW2d 685 (1952). At the same time they should receive a reasonable construction with a view to carrying out the legislative purposes. *In re Detroit & Windsor Ferry Co,* 227 Mich 143, 146; 198 NW 725 (1924).

In his treatise on taxation, COOLEY explained the relationship between these two rules in the following manner:

"In construing revenue laws, special consideration is of course to be had of the purpose for which they are enacted. That purpose is to supply the government with a revenue. But in the proceedings to obtain this it is also intended that no unnecessary injury shall be inflicted upon the individual taxed. While this is secondary to the main object—the impelling occasion of the law—it is none the less a sacred duty." 2 Cooley, Taxation (4th ed), § 503, p 1113.

Therefore, when there is doubt as to the interpretation of a revenue statute, that doubt is to be resolved in favor of the taxpayer only if such resolution is consistent with the purposes of the Legislature.

Further, "in the construction of a statute the manifest intent of the legislature must prevail

over the literal sense of the terms used". *Bates Twp School District v Elliott,* 276 Mich 575, 578; 268 NW 744 (1936) citing, *Stambaugh Twp v Iron County Treasurer,* 153 Mich 104, 107; 116 NW 569 (1908).

The Court of Appeals found § 13 so clear and unambiguous on its face that there was no room for judicial construction. 63 Mich App 577, 584. Admittedly, if a statute is clear and unambiguous on its face, there is no need for judicial construction, *Dussia v Monroe County Employees Retirement System,* 386 Mich 244, 249; 191 NW2d 307 (1971); *Ypsilanti Police Officers Association v Eastern Michigan University,* 62 Mich App 87, 92; 233 NW2d 497 (1975), but we do not find § 13 to be such a statute.

As posited in *Wyandotte Savings Bank v State Banking Commissioner,* 347 Mich 33, 40; 78 NW2d 612 (1956), and reaffirmed in *People v McFarlin,* 389 Mich 557, 563–564; 208 NW2d 504 (1973), in similar language:

"Few words [within a statute] have a 'content so intrinsic' that their meaning does not become doubtful in the context of a particular question."

The language of § 13 is no exception to this rule; it is not so clear and unambiguous as to preclude judicial interpretation. It is, in fact, equally compatible with two interpretations, one constitutional and the other unconstitutional; we must, therefore, choose the former. *State Bar of Michigan v Lansing,* 361 Mich 185, 195; 105 NW2d 131 (1960).

The language of § 13 is phrased in the singular rather than the plural with reference to "assessing officer" and "assessing district". Ford Motor Company and the Court of Appeals each stressed this

to interpret the same as affording a separate election for each assessing district.

However, this Court in *Ready-Power* clearly interpreted similar language to apply to the assessing officers in several districts without any trouble whatsoever.

In conclusion we hold that art 9, § 3 of the Constitution requires us to place an interpretation on § 13 which results in uniformity, if we can, and we do so.

## C. Legislative Intent

In regard to § 13, the intent of the Legislature is clear under the rule that when a statute has been re-enacted or amended in light of prior judicial construction, and the language subjected to such construction is not legislatively changed, it is presumed that the Legislature adopted such construction. *Van Antwerp v State,* 334 Mich 593, 604; 55 NW2d 108 (1952); *Perez v Chrysler Corp,* 36 Mich App 9, 14; 193 NW2d 390 (1971). See, also, *Chrysler Corp v Smith,* 297 Mich 438, 452; 298 NW2d 87 (1941).

Section 13 was amended during the year following *Ready-Power,* by 1954 PA 122, to remove the fiscal year alternative which resulted in the nontaxation of property within the state during the calendar year. The Legislature did not amend the portion of the statute relating to the tax day and average monthly alternatives. Although we must be wary of placing unwarranted reliance on inaction by the Legislature, in this instance the statute was amended as a direct result of *Ready-Power.* We can therefore assume that the Legislature was fully aware of the judicial interpretation in that

case, and that such interpretation was consistent with its intention.

## V—Long Administrative Interpretation and Legislative Acquiescence

In *Ready-Power,* this Court set forth

"The instruction of the State tax commission to assessing officers, under date of January 2, 1952, in Bulletin No 83 [which] states in part:

" '1. A taxpayer having an inventory in more than one assessment district in the State of Michigan must file on the same basis in all assessment districts. The election of the basis for the computation of its inventory remains entirely within the discretion of the taxpayer.' " 336 Mich 524.

In stating its decision this Court in *Ready-Power* referred to its reliance on the State Tax Commission interpreting § 13 to require uniformity as follows:

"If the city's argument is to be approved, we must, in the same breath, approve a violation of the constitutional guaranty of uniformity, in that we must admit that it is proper for Detroit to tax plaintiff on a fiscal year basis and permit the city of Dearborn to tax upon a different basis. The State tax commission itself, as hereinbefore quoted, has recognized the necessity of uniform treatment of taxpayers in its instructions to assessing officers."

Our position in *Ready-Power* with respect to § 13 confirms the rule this Court spoke to in 1968 as follows:

"The construction given to a statute by those charged with the duty of executing it is always entitled to the

most respectful consideration and ought not to be over-ruled without cogent reasons." *Magreta v Ambassador Steel Co,* 380 Mich 513, 519; 158 NW2d 473 (1968).

Sutherland explains the effect of administrative interpretation as "[o]ne of the most significant aids of construction in determining the meaning of revenue laws * * * ". 3 Sutherland, Statutory Construction (4th ed), § 66.04, p 192. See, *Borden, Inc v Dep't of Treasury,* 391 Mich 495, 515; 218 NW2d 667 (1974); *Hazel Park v Municipal Finance Commission,* 317 Mich 582, 605; 27 NW2d 106 (1947).

Section 13 was interpreted by the State Tax Commission as early as 1952, and this interpretation was reaffirmed as recently as 1971 in instruction number 6 on the reverse side of the State Tax Commission 1971 Personal Property Reporting form, which provides:

"The election of the method of reporting the inventory is made annually and the taxpayer must use the same method of average monthly inventory or the December 31, inventory, in all assessment districts in which he has taxable inventories in Michigan."[7]

In *Ready-Power,* as indicated, we cited with approval the commission's interpretation that the taxpayer's election must be uniform throughout the state. This Court did not question the correctness of the administrative interpretation at that time, and there has been neither disaffirmance through case law or change in the commission's

[7] Section 19 of the General Property Tax Act (MCLA 211.19; MSA 7.19) requires that the sworn statement to be submitted to each assessor must *"be in such form* and of such content *as may be prescribed by the state tax commission* * * * " (emphasis added). *See, also,* 2 Michigan State Tax Commission Assessor's Manual, ch 15, p 10.

interpretation. Therefore, totally ignoring that interpretation at this time is not warranted.

Appellee argues, however, that we should ignore this administrative interpretation because it was neither formally promulgated into a rule or regulation under 1943 PA 88, which was in force when *Ready-Power* first acknowledged the interpretation, nor under the Administrative Procedures Act of 1969, MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.,* our present statute for formal promulgation of rules and regulations. With this we cannot agree. To say that this administrative interpretation is not to be accorded the deference granted a codified rule or regulation, is not to say that this Court cannot recognize the same as a valid administrative interpretation and weigh it accordingly. Indeed, the Court of Appeals accorded "much weight" to such an uncodified administrative interpretation in *Grayson v Board of Accountancy,* 27 Mich App 26, 34; 183 NW2d 424 (1970). See, generally, 22 Callaghan's Michigan Civil Jurisprudence, Statutes, § 141.

Further, as stated *supra,* the Legislature is presumed to have accepted this particular administrative interpretation when it amended § 13, subsequent to *Ready-Power,* without change as to the language with which we now deal.

## VI—Common Sense Interpretation

There is no suggestion in the record that Ford managed the location of its inventory for tax rather than manufacturing purposes, and we make no such assumption. However, in interpreting the statute we may legitimately assume that the Legislature intended an interpretation of § 13 that did not invite tax manipulation, all other things being equal. Consequently, it is in order to see what

manipulation could follow, if a taxpayer were permitted under § 13 to adopt the average monthly inventory assessment method in one district and the tax day assessment in another.

Let us suppose that a taxpayer has a $100,000 inventory throughout the year that he can locate in two different assessment districts with equal business and tax rate advantage and can be assessed on December 31 in one district and use the average monthly inventory method in the other. Obviously under the tax day assessment, the taxpayer benefits most by having the least inventory *in situ* on the tax day. Let us assume therefore he has only $10,000 of inventory in the first assessment district during December. Taxwise it does not make any difference under the tax day method how much or how little inventory is present at other times of the year, so we can assume that $90,000 of the $100,000 inventory is kept in the first assessment district January through November. This means that in the second assessment district there would be $10,000 *in situ* January through November, and in December there would be $90,000.

The assessed value in the first district under the tax date method would be the amount of inventory present on December 31, or $10,000. The assessed value in the second assessment district on the average monthly inventory basis would be one-twelfth of the total of $10,000 for 11 months plus $90,000 for one month, or one-twelfth of $200,000, which is $16,666.66. This means that the taxpayer's total inventory value would be $26,666.66 rather than the $100,000, if he had it all in the first or second assessment district all of the time, or were required to make consistent elections throughout the state.

It does not seem probable that this is the result the Legislature had in mind. We do not interpret § 13 to permit such an outcome.

## VII—CONCLUSION

We hold that Ford Motor Company has exceeded the proper limits of § 13 of the General Property Tax Act by electing two different modes of assessment in two assessment districts within the state.

To find otherwise would not only violate the constitutional rule of uniformity of taxation, but would be contrary to prior judicial, legislative and administrative interpretation, as well as common sense, which demands a method of assessment which does not lend itself to manipulations of inventory for tax rather than manufacturing purposes.

The Court of Appeals is, therefore, reversed. No costs, a public question being involved.

BLAIR MOODY, JR., J., concurred with WILLIAMS, J.