DONALD ELMER SENST v. STATE OF INDIANA.

[No. 3-773A82. Filed December 10, 1974. Rehearing denied January 20, 1975. Transfer denied March 19, 1975.]

habitation, (3) with the intent to commit a felony therein. *Carpenter* v. *State* (1974), 159 Ind. App. 373, 307 N.E.2d 109.

*Robert L. Stephan,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellee.

HOFFMAN, C.J.—Defendant-appellant Donald Elmer Senst was charged by affidavit with the offense of keeping a house of ill fame as defined in IC 1971, 35-1-83-2, Ind. Ann. Stat. § 10-4217 (Burns 1956) :

> "Whoever keeps a house of ill fame, resorted to for the purpose of prostitution or lewdness, or knowingly lets a house to be so kept, or knowingly permits a house which he has let to be so kept, shall be fined not less than ten dollars [$10.00] nor more than one hundred dollars [$100], to which may be added imprisonment in the county jail not exceeding six [6] months."

Following trial to the court, appellant was found guilty as charged, fined in the penal sum of $100 and sentenced to imprisonment in the St. Joseph County jail for a period of six months, which was suspended. Appellant was placed on

probation for a period of six months, and ordered to serve four days of such time in the St. Joseph County jail. Thereafter, appellant's motion to correct errors was overruled and the instant appeal was perfected.

The evidence most favorable to the State discloses that appellant was the owner and operator of an establishment known as the "Ace High Bar" which was located in the City of South Bend, Indiana. Appellant-Senst rented the basement, an apartment on the second floor and the ground floor of the building in which the tavern was located.

Officer M. of the South Bend Police Department testified that on the evening of May 8, 1972, he was solicited in the Ace High Bar by a woman who was a dancer at the tavern. The officer further testified that following their conversation, the woman met briefly with appellant who was tending the bar. She obtained a key to a door at the rear of the building, and escorted him "upstairs" where a $30 transaction was consummated in a vacant room. Officer M. testified, under cross-examination by the defense, that appellant was aware of the purpose for which he and the woman had gone upstairs. Officer M. eventually arrested her for prostitution.

Officer Willis Shoemaker testified that at approximately 11:00 P.M. on the evening of May 24, 1972, he entered the Ace High Bar, seated himself in a booth and ordered a drink. Shortly thereafter, he was solicited by a woman who had seated herself at his table. Following their brief conversation, the woman instructed Officer Shoemaker to meet her at the rear of the building. There, she produced a key, unlocked a rear door and escorted the officer up the stairs to a bedroom where she proceeded to remove her clothes. Officer Shoemaker thereupon placed her under arrest.

At approximately the same time on the evening of May 24, 1972, Captain Albert J. Palvoorde and Officer Edward Warsiniak made a forcible entry through the rear door which provided access to the building's second floor. Officer Palvoorde

testified that immediately prior to their entry he observed appellant standing nearby and in speaking to appellant said, "give me a key to the middle door." Appellant thereafter turned and proceeded to the front of the building. When the officers subsequently reached the second floor, appellant appeared again and informed the officers "that's my apartment down there." Also, in reference to another room, Senst was heard to say, "Don't tear the door down." Appellant thereupon assisted the officers by calling out the name of a woman and instructing her to open the door.

During the course of a previous raid which took place on February 8, 1972, at the Ace High Bar, two women and a man were arrested. Officer Warsiniak testified that following the first such arrest he entered the tavern where appellant was at the time tending the bar. The officer, in speaking to appellant, stated, "Don, I have got one of your girls outside." Senst responded with, "Okay, thanks a lot, I will call the bondsman."

Harold Stokes, a witness for the defendant, testified, on direct examination, that he had frequented the Ace High Bar on approximately fifteen occasions during 1972 and that on three such occasions he met and later had sexual relations with different women who worked either as waitresses or "go-go" girls at the tavern. He further testified that he compensated the women for the performance of such acts. On other occasions in which he was present at the Ace High Bar, Stokes observed individual men and women exit through a rear door at approximately the same time.

The first issue to be considered is whether appellant's conviction is supported by sufficient evidence.

Appellant contends that there is no evidence connecting him with the operation of any illegal activities in or about the Ace High Bar.

It is to be noted that when questions concerning the sufficiency of evidence are presented on appeal, this court may

consider only that evidence which is most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. Further, it is not our function to weigh the evidence or determine the credibility of witnesses. *McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554. It has been held that a conviction may be sustained upon circumstantial evidence alone so long as the evidence is of such probative value that a reasonable inference of guilt may be drawn therefrom. *Gregory* v. *State* (1972), 259 Ind. 295, 286 N.E.2d 666. A conviction which rests in whole or in part upon such evidence will not be reversed unless this court can state as a matter of law that reasonable persons, whether they be the jury or, as in the present case, the trial court, could not form inferences with regard to each material element of the offense so as to ascertain a defendant's guilt beyond a reasonable doubt. *Guyton* v. *State* (1973), 157 Ind. App. 59, 299 N.E.2d 233.

The elements of the offense of keeping a house of ill fame are twofold: (1) the establishment in question must, in order to constitute a house of ill fame, be one resorted to for the purpose of prostitution or lewdness; and (2) the party or parties accused of such offense must have kept the house, or having knowledge of its character, suffered it to be so kept. IC 1971, 35-1-83-2, *supra.*

The term "prostitution" as used in IC 1971, 35-1-83-2, *supra,* has been accorded a specific meaning under IC 1971, 35-30-1-1, Ind. Ann. Stat. § 10-4220 (Burns Supp. 1974), which provides, in pertinent part, that "[a]ny female who *** commits or offers to commit one or more acts of sexual intercourse or sodomy for hire, shall be deemed guilty of prostitution." The term thus comprehends not only the actual commission of acts of sexual intercourse or sodomy for hire, but also a solicitation or offer to commit such acts for hire. *Wilson* v. *State* (1972), 258 Ind. 3, 278 N.E.2d 569, 29 Ind. Dec. 323; *Williams* v. *State* (1971), 256 Ind. 228, 267 N.E.2d 840, 25 Ind. Dec. 184;

*Williams* v. *State* (1970), 254 Ind. 4, 256 N.E.2d 913, 20 Ind. Dec. 678; *Andrews* v. *State* (1973), 155 Ind. App. 599, 293 N.E.2d 799, 35 Ind. Dec. 594.

Direct evidence presented in the instant case demonstrates that both Officers M. and Shoemaker were solicited at different times in the Ace High Bar. Neither officer had been invited to the premises and it is clear that the solicitations in each instance were indiscriminate. Officer M. testified, under cross-examination by the defense, that "we had sat there all night and we had seen numerous booths been emptied ahead of us and with the same kind of pattern that went up just before they got to us." The testimony of Harold Stokes revealed a recurrent pattern in which he met with women who were employed in the Ace High Bar and who thereafter performed sexual acts in return for compensation. The foregoing evidence, both direct and circumstantial, sufficiently established that the Ace High Bar was an establishment resorted to for purposes of prostitution and was, therefore, a house of ill fame within the meaning of the statute.

The question remains as to whether appellant has been shown to have been the "keeper" of such house or suffered it to be so kept. Implicit in the "keeping" of a bawdyhouse or house of ill fame is the requirement that one accused of the offense must have had knowledge of the illegal practices conducted on the premises. In this regard, proof of actual knowledge is unnecessary where, by reason of evidence demonstrating the common or frequent recurrence of illegal practices on the premises, constructive knowledge can be established. Also, manifest in the term "keeping" is the necessity that an accused be shown to have been the tenant or owner of the establishment or premises, thereby possessing the means to control the conduct of illegal activity.

In the instant case, the testimony of the appellant reveals that he was the proprietor of the Ace High Bar and that he leased the area occupied by the tavern itself from another individal. Furthermore, the body of circumstantial evidence

is such that knowledge on the part of appellant concerning illegal practices conducted on the premises may reasonably be inferred.

The essential elements of the offense of keeping a house of ill fame have been established; and, it must be concluded that the evidence is sufficient to support appellant's conviction.

The next issue presented for review is whether the trial court erred in permitting police officers to express opinions as to the character of the Ace High Bar and to testify concerning the reputation of the establishment as a house of ill fame.

Our Supreme Court considered a similar question in the case of *Sumpter* v. *State* (1974), 261 Ind. 471, at 481, 306 N.E.2d 95, at 102, 103, 40 Ind. Dec. 389, wherein it is stated:

> "The appellant's position, with which we concur, is that the admission of such rank hearsay to prove that the house in question was *in fact* a house of ill fame, and that appellant was *in fact* a prostitute, violated appellant's right to confrontation as guaranteed by the Sixth Amendment to the United States Constitution and by Article 1, § 13 of the Indiana Constitution.
>
> \* \* \*
>
> "Two old Indiana cases recognize reputation as an exception to the hearsay rule. Betts et al. v. State (1883), 93 Ind. 375; Schultz v. State (1928), 200 Ind. 1, 161 N.E. 5. However, we do not believe such an exception can pass constitutional muster in light of the above discussion. We can conceive of no evidence more inherently suspect than reputation evidence based on the statements of out-of-court declarants. There simply is [are] no 'indicia of reliability'— in fact, if anything, there is an indicia [indicium] of *unreliability*. There are no built-in safeguards as in the case of former, sworn testimony or admissions of a party-opponent. We, therefore, can see no justification for such an exception if we are to maintain the integrity of an accused's rights to confrontation. We do not hold that reputation evidence is in all instances inadmissible. Such evidence is admissible for impeachment purposes or when the character of a party is in issue. We only hold that evidence of reputation introduced as substantive evidence of guilt is inadmissible. In the case at bar the evidence of reputation

was introduced to establish guilt and consequently was erroneously admitted by the trial court."

It should be pointed out that in the present case we are similarly confronted with a federal constitutional error involving the denial of appellant's right to confrontation. However, it must be concluded upon application of the appropriate federal standards that error attending the admission of the testimony in question was harmless beyond a reasonable doubt. *Chapman* v. *California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Greer* v. *State* (1969), 252 Ind. 20, 245 N.E. 2d 158.

The next issue to be considered is whether the trial court erred in refusing to grant appellant's motion in limine which ostensibly sought to restrict the evidence introduced to that relating to the period of time specified in the affidavit under which appellant was charged, *i.e.*, May 1, 1972 to May 31, 1972.

It must, however, be pointed out that neither the motion in limine itself nor the trial court's ruling thereon is contained in the record. Accordingly, this court cannot consider matters relating to the motion or the trial court's action with respect thereto. See: *Hansbrough* v. *State* (1950), 228 Ind. 688, 94 N.E.2d 534; *Glenn* v. *State* (1972), 154 Ind. App. 474, 290 N.E.2d 103 (transfer denied).

The final issue presented is whether the trial court erred in permitting the introduction of testimony regarding arrests which took place at the Ace High Bar prior to May 1, 1972, the beginning of the period specified in the affidavit.

In the case of *Freeman* v. *The State* (1889), 119 Ind. 501, 21 N.E. 1101, a grand jury had returned two indictments charging the defendant with the offense of keeping a house of ill fame. One indictment charged the offense on January 9, 1889, and the other charged it on February 11, 1889. The defendant was arraigned and pleaded guilty to the latter indictment. Thereafter, the defendant was arraigned on the former and

pleaded not guilty. On review, the Supreme Court of Indiana, at 502-503 of 119 Ind., at 1102 of 21 N.E., stated that,

"The offence is a continuing one. *The time named in the indictment was not material.* The one conviction was a bar to the other.

"*The State* v. *Lindley,* 14 Ind. 430, was a prosecution for keeping a gaming house, and it was held that all the time during which it was continuously kept prior and up to the prosecution for the keeping, constituted one indivisible offence, which could be punished but in a single prosecution. And so in this case, the one conviction was a bar to all others for the one continuous keeping of the house prior and up to the returning of the indictment upon which such conviction was had. The doctrine held in the case of *State* v. *Lindley, supra,* is decisive of the question in this case, and we think it the correct principle. The offense charged is a continuing one. *A conviction might have been obtained under either of the indictments by proof of the keeping of the house at any time prior to the finding and returning of the indictment,* and not beyond the time fixed by the statute of limitations. The crime charged is the continuous keeping of the same house; the same proof was admissible under the one indictment as the other." (Emphasis supplied.) See: *Sumpter* v. *State, supra.*

The rationale expressed by the court in *Freeman* is also applicable to the question presently before this court. Evidence of illegal activity prior to the date specified in the charging affidavit must be considered admissible by reason of the continuing nature of the offense of keeping a house of ill fame. The trial court did not commit error in permitting the introduction of testimony as to prior arrests which occurred at the location in question.

No reversible error having been shown, the judgment of conviction appealed from is affirmed.

Garrard and Staton, JJ., concur.

NOTE.—Reported at 319 N.E.2d 663.