Patricia A. **PRUITT**, Appellant
(Defendant Below),

v.

**STATE of Indiana**, Appellee
(Plaintiff Below).

No. 35A02–8808–CR–00316.

Court of Appeals of Indiana,
Second District.

July 31, 1990.

Rehearing Denied Sept. 17, 1990.

Frank E. Spencer, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Danielle Sheff, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Patricia A. Pruitt appeals her conviction of five counts of professional gambling, in violation of IC 35–45–5–3 (1988), and one count of promoting professional gambling, in violation of IC 35–45–5–4(a) (1988), all class D felonies.

We affirm.

### FACTS

From February 14, 1988 through March 2, 1988 Pruitt managed a bingo parlor in Huntington County at which bingo games with cash prizes were played and tickets for other games of chance were sold. Pruitt was originally charged with seven counts of professional gambling, for bingo games held on February 14, 17, 19, 20, 21, 28, and March 2, 1988, and with seven counts of promoting professional gambling on the same dates.

Pruitt moved to dismiss counts one through six of each offense on the ground the offenses were continuing and, therefore, merged into count seven of each offense. She also sought to dismiss the seven professional gambling counts, claiming they were the result of selective enforcement in violation of her equal protection rights. The State subsequently dismissed the seven promoting gambling counts after filing an eighth count charging Pruitt with promoting gambling, "[f]rom and after the 14th day of February, 1988 and through the 2nd day of March, 1988." Record at 25. The court then denied Pruitt's motion to dismiss the professional gambling counts. However, prior to trial, the State dismissed the professional gambling counts

relating to February 21 and February 28 (counts five and six).

Pruitt was tried before a jury on five counts of professional gambling (February 14, 17, 19, 20, and March 2, 1988), and one count of promoting professional gambling (February 14 through March 2, 1988). She was convicted of all six counts. The court sentenced her to concurrent terms of two years on each offense and fined her $10,-000 for each offense; she appeals.

### ISSUES

1. Whether the trial court erred in denying Pruitt's motion to dismiss all but one count of professional gambling on the grounds there was only one continuing offense.

2. Whether the trial court erred in denying Pruitt a hearing on her motion to dismiss the pending charges on the ground the charges were the result of selective prosecution.

3. Whether the trial court erred in instructing the jury to disregard Pruitt's claim of selective prosecution.

4. Whether the trial court erred in refusing a tendered instruction quoting the privileges and immunities clause of the Indiana Constitution.

5. Whether the trial court erred in refusing tendered instructions concerning statutory construction.

6. Whether the convictions of professional gambling are contrary to law and not supported by sufficient evidence.

7. Whether the trial court erred in assessing $10,000 fines on each of the professional gambling counts.

### DISCUSSION

#### I.

■ Pruitt's first argument is her five professional gambling convictions, each concerning a single day during a period of less than three weeks, represent a single continuing offense and, therefore, all but one of those counts should have been dismissed upon her motion. She cites three Indiana cases in support of her position,

*Freeman v. State* (1889), 119 Ind. 501, 21 N.E. 1101; *State v. Lindley* (1860), 14 Ind. 430; and *Senst v. State* (1974), 162 Ind. App. 357, 319 N.E.2d 663; and claims that because "[t]ime is not the essence of the offense ... and ... a conviction might have been obtained ... under any of the Counts by proof of the allegations as to any date within the statute of limitations," the five convictions cannot all stand. Appellant's Brief at 9.

*State v. Lindley* involved a charge of keeping a gaming house, an offense which our supreme court held *"may* be a continuous act," depending on whether there was "but one continuous keeping." 14 Ind. at 430 (emphasis added). However, because evidence presented at trial could establish multiple offenses if the State proved an interruption and resumption of the "keeping" occurred, the *Lindley* court reversed the trial court's quashing of the pending charge and ordered the charge reinstated. By so doing, the supreme court implicitly concluded the gravamen of the "keeping" offense was the continuous nature of the prohibited conduct. That same court explained in a subsequent decision:

The words, "common nuisance" as used in [Section 20 of the Prohibition Act] carry with them a notion of continuous or recurrent violation....

The words "maintains" and "maintaining" denote continuous or recurrent acts approaching permanence. We therefore conclude that the case is analogous to those of keeping a gaming house, and is governed by the rule laid down in *State v. Lindley* (1860), 14 Ind. 430, and *Nace v. State* (1889), 117 Ind. 114, 19 N.E. 729, to the effect that the keeping of such a house is a continuous act, and that all the time a house or place is thus kept, prior to the prosecution, constitutes but one indivisible offense, punishable by a single prosecution.

*Keeth v. State* (1923), 193 Ind. 549, 550–51, 139 N.E. 589, 590 (citations omitted).

Professional gambling is defined by statute as follows:

A person who knowingly or intentionally:

(1) engages in pool-selling;

(2) engages in bookmaking;

(3) maintains, in a place accessible to the public, slot machines, one-ball machines or variants thereof, pinball machines that award anything other than an immediate and unrecorded right of replay, roulette wheels, dice tables, or money or merchandise pushcards, jars, or spindles;

(4) conducts lotteries, gift enterprises, or policy or numbers games, or sells chances therein;

(5) conducts any banking or percentage games played with cards, dice, or counters, or accepts any fixed share of the stakes therein; or

(6) accepts, or offers to accept, for profit, money or other property risked in gambling;

commits professional gambling, a class D felony.

IC 35-45-5-3.

A single transaction can support Pruitt's convictions of subsection (4) professional gambling [1] because the gravamen of the offense, in contrast to professional gambling as defined in subsection (3), is not its continuous nature. Unlike keeping a gambling house, as that offense was defined in Indiana at the time of the *Lindley* decision, the form of professional gambling with which Pruitt was charged is an offense which need not occur over a period of time but rather occurs with each lottery incident.

The other cases Pruitt cites are also unavailing. *Freeman v. State* (1889), 119 Ind. 501, 21 N.E. 1101, involves two indictments brought under a statute providing that " '[w]hoever keeps a house of ill-fame, resorted to for the purpose of prostitution or lewdness,' etc., shall be fined, etc." *Id.* at 502, 21 N.E. at 1102. The court held the two indictments charged merely "the con-

tinuous keeping of the same house," and thus a conviction on one count barred prosecution on the other. *Id.* at 503, 21 N.E. at 1102. Pruitt apparently cites *Freeman* for the following statement:

"The test is, whether, if what is set out in the second indictment had been proved under the first, there could have been a conviction; when there could, the second can not be maintained; when there could not, it can be." When tested by this rule, the two offenses charged against the defendant are the same.

*Id.* (quoting 1 *Bishop on Criminal Law* § 1052). While this statement is true, it does not apply to a situation in which the charges refer to two distinct violations, i.e., the gravamen of the particular offense is not its continuous nature. Further,

[t]he precise manner in which an indictment is drawn cannot be ignored, because an important function of the indictment is to ensure that, "in case any other proceedings are taken against [the defendant] for a similar offense, ... the record [will] sho[w] with accuracy to what extent he may plead a former acquittal or conviction."

*Sanabria v. United States* (1978), 437 U.S. 54, 65–66, 98 S.Ct. 2170, 2179, 57 L.Ed.2d 43 (quoting *Cochran v. United States* (1895), 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704) (changes in original). In the present case, the separate counts of the information contain specific dates for each violation, thereby clearly defining several discrete occurrences of professional gambling. (Although the allegations in each count state "on or about" a particular date, we note that the jury was instructed that the State was obligated to prove that the violations occurred "on the date specified in each information." Supp. Record at 18.)

---

1. The several counts charging professional gambling read, in relevant part:

    On or about ... Patricia A. Pruitt did knowingly and or intentionally engage in professional gambling by maintaining and/or managing a public place of business known as the Midway Recreational Center wherein she conducted a lottery in the form of bingo games which constituted gambling....

Record at 7, 8, 9, 10, 11, 12, 13. The "maintaining and/or managing a public place of business" language is surplusage inasmuch as it does not define conduct prohibited by subsection (3) of the professional gambling statute; the prohibited conduct is "intentionally ... conducted a lottery...." IC 35-45-5-3(4) and (6).

Pruitt also relies upon *Senst v. State* (1975), 162 Ind.App. 357, 319 N.E.2d 663. In *Senst*, this court affirmed a conviction of keeping a house of ill fame over the defendant's claimed error in the admission of testimony of arrests which occurred prior to the beginning of the period specified in the charging instrument. Following *Lindley* and *Freeman*, the *Senst* court held the evidence was properly admitted "by reason of the continuing nature of the offense of keeping a house of ill fame." 319 N.E.2d at 668. *Senst* adds nothing to Pruitt's argument.

■ Thus, we conclude Pruitt misstates the definition of a continuing offense. Under her definition, a defendant charged with committing two separate acts of battery against the same victim within a single week could be charged with only one offense. Properly, a continuing offense is

> a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy; a breach of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences.

22 C.J.S. *Criminal Law* § 3(b), at 4 (1989) (footnotes omitted). While a single continuing offense may not be divided arbitrarily and prosecuted as several separate offenses, *id.,* § 14(a), at 14; *Haggard v. State* (1983), Ind., 445 N.E.2d 969, 972–73, *modified on other grounds, Bailey v. State* (1985), Ind., 472 N.E.2d 1260, there is no bar to the prosecution of multiple offenses where separate and distinct illegal acts have been committed and there exists a separate and distinct intent, impulse, and force for each act. 22 C.J.S. *Criminal Law* § 14(a), at 14 & 15 n. 39.

Here, each count charged Pruitt with maintaining and/or managing a public place of business, on a distinct day, "wherein she conducted a lottery in the form of bingo games which constituted gambling." Record at 7–10, 13. The evidence is Pruitt operated the bingo parlor beginning at a pre-announced time on each evening in question; handbills containing a different schedule of events were printed and distributed for each evening. This evidence is sufficient to support the conclusion a separate and distinct act of professional gambling took place each evening; thus, the trial court did not err in denying Pruitt's motion to dismiss the several separate counts of professional gambling.

## II.

■ Pruitt argues the court erred in denying her a hearing on her motion to dismiss the professional gambling counts on the basis they were the result of selective prosecution prohibited by the Fourteenth Amendment to the United States Constitution and Article I, Section 23 of the Indiana Constitution.

In *Albright v. State* (1986), Ind.App., 501 N.E.2d 488, 497, this court held the issue of selective prosecution must be raised by a defendant by written motion prior to trial:

> Frist, we acknowledge that selective prosecution may be a basis for dismissal in a criminal action. The matter should be brought to the attention of the court *by written motion which, on its face, reveals a basis for such claim.* A hearing must be set outside the presence of the jury at which both the defendant and the prosecuting attorney are given the opportunity to present evidence.

501 N.E.2d at 497 (emphasis added). The "basis" revealed in Pruitt's motion is the following:

> 3. In any week there are about 2,000 bingo games operating in Indiana. Many openly advertise for patrons through newspaper advertisements and mailed circulars. The Indiana State Police know of this but selected defendant for publicity only.

> 4. No other bingo games have been raided in Indiana this year. Indiana State Police have neither investigated nor brought any criminal charges against the operator of any other bingo game.

Record at 35. The trial court summarily denied Pruitt's motion.

The essential elements of a claim of selective prosecution are: "(1) that other violators similarly situated are generally not prosecuted; (2) that the selection of the claimant was 'intentional or purposeful'; and (3) that the selection was pursuant to an 'arbitrary classification.'" 2 W. LaFave & J. Israel, *Criminal Procedure* § 13.4(a), at 187 (1984). An "arbitrary classification" includes a classification based upon race, religion, sex or other constitutionally suspect distinction that bears no rational relationship with legitimate law enforcement objectives. *See Love v. State* (1984), Ind., 468 N.E.2d 519, 521 ("the defendant has the burden of proving that he was, in fact, the victim of selective prosecution, based upon 'an impermissible classification such as race, religion or sex.'" (quoting 2 W. LaFave & J. Israel, *Criminal Procedure* § 13.4 (1984))), *cert. denied* (1985), 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851; *Oakland County Prosecutor v. 46th District Judge* (1977), 76 Mich.App. 318, 331, 256 N.W.2d 776, 781 (prosecution of private poker game under state conspiracy and gambling statutes held not to violate equal protection rights "unless it is based upon race, religion or some other arbitrary distinction").

Pruitt's motion to dismiss alleges the first of the above-mentioned elements, and arguably the second, but fails to make an assertion of any classification, let alone an impermissible classification under either the United States or Indiana constitutions. Because the basis for her claim of selective prosecution did not appear on the face of her motion, the trial court did not err in summarily denying the motion.

### III.

■ Pruitt's third argument is that the trial court erred in instructing the jury to disregard the issue of selective prosecution. The jury was instructed as follows:

Whether or not another or others or no others have or have not been charged with a crime for the same or similar acts is not relevant to the guilt or innocence of the Defendant in this case. You should determine the guilt or innocence of the defendant solely upon the evidence presented to you and the law as contained in the instructions of the Court.

Supp. Record at 21. Pruitt concedes on appeal that *Albright v. State* (1986), Ind. App., 501 N.E.2d 488 holds selective prosecution is irrelevant to the guilt or innocence of a defendant and therefore is not a jury issue. For this same reason, there is no merit to Pruitt's claim the court compounded its error in denying a hearing by preventing the jury from considering the issue. There is no issue for the jury to determine.

### IV.

Pruitt contends the court erred in refusing her tendered instruction number 2 which reads:

The General Assembly should not grant to any citizen, or class of citizens, privileges or immunity which, upon the same terms, shall not equally belong to all citizens.

Supp. Record at 3. On appeal, Pruitt maintains this instruction was relevant to the issue of selective prosecution. As we have already noted, selective prosecution is not a jury issue; there was, therefore, no error in refusing to give the instruction to the jury.

### V.

Pruitt claims the court erred in refusing her tendered instructions number 3 and 4 which respectively, read:

Even though an act may fall within the spirit of the statute, it will not constitute a public offense unless it is also within the words of the statute.

Supp. Record at 4.

Statutes defining criminal offenses are, as a general rule, to be strictly construed to avoid the creation of penalties by construction.

Supp. Record at 5.[2]

■ In reviewing a trial court's refusal of a tendered instruction, we determine

---

2. Pruitt's trial counsel cited four authorities in support of the instruction, including "*SHORT v.*

(1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the instruction is covered by other instructions that were given. *Storey v. State* (1990), Ind., 552 N.E.2d 477, 482. The decision of what instructions to give lies largely within the trial court's discretion. *Canaan v. State* (1989), Ind., 541 N.E.2d 894, 910. On appeal, we consider the instructions as a whole. *Id.* Instructions that are likely to mislead or confuse the jury should be refused. *Storey*, 552 N.E.2d at 484; *Hicks v. State* (1989), Ind., 536 N.E.2d 496, 501.

The trial court did not err in refusing Pruitt's tendered instruction number 3. The essence of the instruction is that only criminal conduct prohibited by the words of the criminalizing statute is prohibited. The jury was adequately advised of that principle by the court's instruction which defined the elements of the two relevant offenses and further advised "[i]f on any count, the State fails to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty on that count." Supp. Record at 18. Thus, the jury was told the charged conduct must fall within the elements of the charged offense before the jury could find an offense had been committed. In addition, the trial court gave an instruction concerning the jury's general duty to determine the applicable law:

> Since this is a criminal case the Constitution of the State of Indiana makes you the judges of both the law and the facts. Though this means that you are to determine the law for yourself, it does not mean that you have the right to make, repeal, disregard, or ignore the law as it exists. The instructions of this Court are the best source as to the law applicable to this case.

Supp. Record at 14. The trial court did not err in refusing Pruitt's instruction number 3 because it was otherwise adequately and properly instructed.

The trial court also did not err in refusing Pruitt's tendered final instruction number 4. The instruction appears to be out-of-context phrases quoted from *West's Indiana Law Encyclopedia*. The instruction could only have served to confuse the jury. Accordingly, the trial court properly refused it.

## VI.

Pruitt next argues her convictions of professional gambling are contrary to law and are not supported by sufficient evidence. She contends her convictions are contrary to law because conducting bingo is not criminalized by IC 35–45–5–3, the statute under which she was convicted. Alternatively, she argues the evidence is insufficient to sustain her convictions because there is "no evidence the 'bingo' ... played at Midway Recreation Center included the selection of lots by chance." Appellant's Brief at 16.

Pruitt was convicted under subsection (4) of IC 35–45–5–3 which provides that one who "conducts lotteries" commits professional gambling. A "lottery" is a scheme for the distribution of prizes by lot or chance. *Tinder v. Music Operating, Inc.* (1957), 237 Ind. 33, 40, 142 N.E.2d 610, 614; *Robb v. State* (1968), Ind., 239 N.E.2d 154, 157 (per curiam); *cf. State v. Nixon* (1979), 270 Ind. 192, 207, 384 N.E.2d 152, 161 (as used in Indiana Constitution, "lottery" "embraces all forms of gaming which, by reason of retainage, service charge, or odds, preclude the participants, in sustained play, from winning while providing a reasonable expectancy of profit for the sponsors"). It has three essential elements: consideration, chance and prize. *Lashbrook v. State* (1990), Ind.App., 550 N.E.2d 772.

So defined, bingo played for a prize received by chance or lot in exchange for

*STATE* (1954) 234 Ind. 17 N.E. 2d 82". Her appellate counsel refers us to "Short v. State, (1984), 234 Ind. 17 N.E. 2d 82," Appellant's Brief at 14, and then to "Short v. State (1954), 234 Ind. 17 N.E. 2d 82," Reply Brief at 14. Else-

where appellate counsel refers us to "Short v. State, (1954), 234 Ind.    , 17 N.E. 2d 82". Appellant's Brief at 15. We presume the case which Pruitt's attorneys intended to refer is *Short v. State* (1954), 234 Ind. 17, 122 N.E.2d 82.

consideration is a lottery and prohibited by IC 35–45–5–3(4). The next question, then, is whether the evidence construed most favorable to the judgment supports a conclusion that Pruitt operated bingo, so defined. It does.

Pruitt contends specifically there is no evidence the bingo games in question included the selection of lots by chance. As we have noted, a "lottery" distributes prizes by lot *or* chance. There is evidence in the record concerning the selection of lots by chance in the instant bingo games by means of a bingo air machine, and of payment to play the game in exchange for the opportunity to win a prize. This is evidence from which a reasonable fact finder could and did find the bingo games operated by Pruitt on the times charged are lotteries.

### VII.

Finally, Pruitt contends the court erred in fining her $10,000 on each of the professional gambling counts. She argues she should have been fined only once for professional gambling because the five counts represented one continuing offense, and because the imposition of multiple fines is manifestly unreasonable.

Pruitt's argument the several counts represent only a single continuing offense is without merit. Pruitt's remaining argument that "[t]he addition of the $10,000.00 fine for each of the other Counts, and particularly without any finding in the judgment entry of aggravating factors, was manifestly without basis in law or fact" is also without merit. Appellant's Brief at 17.

Pruitt has merely paraphrased the standard we apply in determining whether to revise a sentence as found in Ind. Appellate Rule 17(B)(1).[3] Although sentences of incarceration are served concurrently absent aggravating circumstances, IC 35–38–1–7.-1(b) (1990 Supp.), there is no analogous statutory provision for fines. Therefore,

because Pruitt presents neither authority nor cogent argument in support of her claim the instant multiple fines are manifestly unreasonable, we deem her argument waived.

Judgment affirmed.

BAKER, J., concurs.

SULLIVAN, J., dissents in part and concurs in part, with separate opinion.

SULLIVAN, Judge, dissenting in part and concurring in part.

I fully concur in Parts II, III, IV, V and VI. I dissent with respect to Parts I and VII.

In Part I, the majority emphasizes that the separate charges focus upon a distinct day on which the public place of business was maintained and a lottery conducted.

As quoted in the majority opinion, *Keeth v. State* (1923) 193 Ind. 549, 139 N.E. 589, noted:

> "The words 'maintains' and 'maintaining' denote continuous or recurrent acts approaching permanence." Maj. opinion at 686.

Generally, the term "recurrent" is used in the sense of "repeated". *Wabash Corporation v. Ross Electric Corporation*, 89 F.Supp. 720, 726 (E.D.N.Y.1950). It describes a "returning from time to time." *Messer v. Beighley* (1963) 409 Pa. 551, 187 A.2d 168, 170. It connotes repetition of the same act or conduct and contemplates cessation and resumption, not a single act continuing and unbroken in time.

Although the word "continuous" is most often deemed to refer to an act unceasing and uninterrupted in nature, it has been defined as "recurring regularly after minute interruptions." *Fowler v. United Equitable Insurance Co.* (1968) 200 Kan. 632, 438 P.2d 46, 49. Particularly where the word is used, as in *Keeth, supra,* in tandem with the word "recurrent", it takes on the latter caste.

3. In *Austin v. State* (1988), Ind.App., 528 N.E.2d 792, this court held the Indiana Rules for the Appellate Review of Sentences apply to fines as well as incarceration. Those rules were replaced by Ind. Appellate Rule 17, effective January 1, 1990, which we similarly hold applicable to both fines and incarceration.

I am accordingly led to the conclusion that the brief respites from the lottery activity did not constitute such interruption as to undermine the continuous and recurrent nature of the business. Pruitt, as charged, maintained and managed her public place of business. She did so each and every day. The continuous and recurrent activity was charged as such. Whether the prosecution might have avoided the single crime nature of this offense by merely alleging that on each separate date Pruitt conducted a lottery is not the question.

The State obviously intended that there be some significance placed upon the fact that Pruitt not only conducted a lottery on the days alleged but that she did so professionally by maintaining and/or managing a public place of business in order to do so. The State voluntarily placed this case in the category of a "keeping" or "maintaining" case. Quite logically, the prosecutor deemed it more egregious for Pruitt to be engaged on a continuing and continuous big business basis. In any event, the State should be bound by the manner in which the charge was framed.

Here, Pruitt's lottery activity was a "series of acts set on foot by a single impulse and operated by an unintermittent force." 22 C.J.S. Criminal Law § 3(b) at 4 (1989) as quoted by the majority. Maj. opinion at 688. It was therefore a continuing offense subject to but a single prosecution.

The language of the charges and the evidence emphasized by the State lead to a conclusion that a continuing offense was charged and proved. Time was not of the essence of the offense. It was therefore improper to arbitrarily attempt to divide and prosecute the crime as several separate offenses.

Because of my view with regard to the continuous and recurrent nature of Pruitt's business operation, I must also dissent as to Part VII of the majority opinion.

I would affirm the two year sentence and a $10,000 fine on one count of professional gambling and the two year sentence and the $10,000 fine on the one count of promoting professional gambling. In my vote to affirm the latter conviction, I emphasize

that there was evidence of promotion, as such, separate and distinct from conducting the bingo operation itself.